UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
_____

<u>Teriana Jones and Bethany Morrissey</u>
On behalf of themselves and a class                         Case No:        17-CV-125
of employees and/or former employees
similarly situated,

     Plaintiffs,
               vs.

Cruisin' Chubbies Gentlemen's Club, et al.

     Defendants.
_____

**BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR
CONDITIONAL CERTIFICATION AND JUDICIAL NOTICE**
_____

     Plaintiffs request conditional certification and leave to send judicial notice to putative class members. The appended declarations make a "modest factual showing" that Plaintiffs and other class members are victims of a common policy or plan that violates the law because: (1) Defendants impose the same job duties on all dancers; (2) Defendants employ uniform rules to control dancers' work and pay; (3) Defendants enforce their rules by levying monetary penalties; and (4) Defendants categorize all dancers as independent contractors, refusing to pay them minimum wage and overtime.

     Plaintiffs also seek an Order requiring Defendants to produce a list of the potential plaintiffs to whom judicial notice will be sent.

## SUMMARY OF PROCEDURAL HISTORY

     This lawsuit was filed February 22, 2017 by Teriana Jones, a former exotic dancer at the Defendants' exotic dance club and resort, Cruisin' Chubbies Gentlemen's Club ("the Club") located in Wisconsin Dells, Wisconsin. Jones alleges Defendants misclassified her and other dancers as independent contractors and brought claims for failure to pay

minimum wage and overtime, unlawful deductions, conversion, and unjust enrichment under both federal and state laws. On May 23, 2017, Jones filed an amended complaint to name Bethany Morrissey as a co-plaintiff. Both plaintiffs worked as dancers for Defendants during the relevant statutory period. Currently, eight (8) dancers desire to opt-in to the lawsuit pending the Court's decision on the Plaintiffs' concurrent motion to allow putative class members to join anonymously.

## FACTS

Defendants are in the business of providing adult entertainment, lodging, food and alcoholic beverages to their customers at the Club.[1] To provide such adult entertainment, Defendants employ exotic dancers to dance for and spend time with Defendants' customers at the Club.[2] The Club is open seven (7) days a week, opening its doors at 5:00 p.m. each day.[3] On weekday nights (Sunday – Thursday), the Club is open 10.5 hours, closing at 2:00 a.m.[4] On weekend nights (Friday – Saturday), the Club is open 11 hours, closing at 2:30 a.m.[5]

Defendants employ James Ewert to schedule enough dancers to cover the various weekday and weekend shifts.[6] On weeknights, Defendants typically schedule 12 dancers a night during the summer months, which are busier, and 8-10 dancers during the winter months, which are slower. On weekends, Defendants scheduled 18-28 dancers during the summer months and 14-18 dancers during the winter months.[7]

Most dancers desire to work weekends rather than weekdays because the Club is busier.[8] The Defendants therefore have a rule that dancers desiring to work the weekends must also work two weekday shifts in that week.[9]

---

[1] Dkt. 1
[2] Id.
[3] Jones Dec., ¶5; Morrissey Dec., ¶6
[4] Jones Dec., ¶6; Morrissey Dec., ¶7
[5] Jones Dec., ¶7; Morrissey Dec., ¶8
[6] Jones Dec., ¶8; Morrissey Dec., ¶9
[7] Jones Dec., ¶9; Morrissey Dec., ¶10
[8] Jones Dec., ¶11; Morrissey Dec., ¶11
[9] Id.

If a dancer wants to work at the Club, she contacts Mr. Ewert via telephone or text to get on the schedule.[10] If the Club has enough dancers for that week, Mr. Ewert turns the dancer away.[11] If the Club is in need of dancers, however, Mr. Ewert contacts dancers to cover shifts.[12]

Defendants require dancers to be on the floor, fully ready to work by 5:00 p.m. for each shift.[13] Defendants require dancers to wear revealing, bikini-like outfits and high heels while they work.[14] Dancers need a certain amount of time to get ready for work, as they must do their hair and makeup, change into their outfits, and maintain personal hygiene before dancing.[15] As such, dancers do not show up to the Club right at 5:00 p.m., but rather arrive around 4:00 p.m. to 4:15 p.m. in order to get ready.[16] The Club has a dressing room in the back where dancers change and get ready together.[17]

Mr. Ewert maintains the Club's black, 3-ring binder at the entrance of the Club, which contains spreadsheets for each night of business.[18] When dancers are ready to take the floor, they must "clock-in" by signing their names in the 3-ring binder and identifying the exact time.[19] If a dancer fails to clock-in for her shift by 5:00 p.m., Defendants penalize her by increasing her nightly "tip-out"—i.e. the fee the Club collects from dancers at the end of the night.[20] Defendants increase a tardy dancer's tip-out by ten dollars for each hour or portion of an hour she clocks-in late.[21] Therefore, if a dancer clocks-in between 5:00 p.m. and 6:00 p.m., Defendants increase her tip-out by $10.00; if she clocks-in between 6:00 p.m. and 7:00 p.m., Defendants increase her tip-out $20.00, and so forth.

---

[10] Jones Dec., ¶11; Morrissey Dec., ¶12
[11] Morrissey Dec., ¶13
[12] Id at 14
[13] Jones Dec., ¶15; Morrissey Dec., ¶15
[14] Jones Dec., ¶12; Morrissey Dec., ¶16
[15] Jones Dec., ¶12; Morrissey Dec., ¶17
[16] Jones Dec., ¶5; Morrissey Dec., ¶19
[17] Morrissey Dec., ¶20
[18] Jones Dec., ¶14; Morrissey Dec., ¶21, 22
[19] Id.
[20] Jones Dec., ¶15, 16; Morrissey Dec., ¶23, 24
[21] Id.

Once a dancer clocks-in, she takes the floor to await further instruction.[22] The floor consists of all customer areas at the Club, including the bar, bar seating, and the tables and seating around the Club's various stages and dancing poles.[23] The Club's building has three floors or levels: the main (ground) floor, which has two 3-pole stages for dancing; an upstairs "VIP Lounge" area with an additional 1-pole stage, and a lower level where private dances are performed.[24] *See* photographs of the Club attached to Morrissey declaration as **Exhibits A-H**.

When all the dancers have clocked-in and are on the floor and ready to work, the Club's disc jockey (DJ) announces which dancers will take the stages first.[25] The DJ and owners determine the order of the dancers who dance on stage for the duration of the night. Dancers do not have a say in what order they will dance.[26]

During the weekend nights, Defendants require each dancer to dance on stage for 2 songs during her rotation.[27] During weeknight shifts, Defendants require dancers to dance on stage for 3 songs.[28]

While on stage, Defendants require dancers to remove their tops and bottoms (completely nude).[29] All dancers remove their tops while dancing on stage.[30] Some dancers refuse to remove their bottoms, however.[31] If a dancer fails to remove her bottom on stage, Defendants penalize her by increasing her tip-out $25.00 at the end of the night.[32]

Dancers earn money dancing on stage by collecting dollar tips that customers drop on the stage or otherwise give to them while dancing.[33] Defendants allow dancers to retain these tips subject to the mandatory tip-out at the end of the night.[34]

---

[22] Jones Dec., ¶17; Morrissey Dec., ¶25
[23] Jones Dec., ¶18; Morrissey Dec., ¶27
[24] Id.
[25] Jones Dec., ¶19; Morrissey Dec., ¶28
[26] Jones Dec., ¶20; Morrissey Dec., ¶29
[27] Jones Dec., ¶21; Morrissey Dec., ¶30
[28] Jones Dec., ¶22; Morrissey Dec., ¶31
[29] Jones Dec., ¶23; Morrissey Dec., ¶32, 33
[30] Id.
[31] Morrissey Dec., ¶34
[32] Jones Dec., ¶23; Morrissey Dec., ¶35
[33] Jones Dec., ¶25; Morrissey Dec., ¶36
[34] Jones Dec., ¶26; Morrissey Dec., ¶37

When a dancer is not dancing on stage, Defendants require her to "work the floor."[35] This involves approaching customers at their tables, talking with them and flirting with them in order to entice them into paying for a private dance.[36]

Defendants have strict rules for dancers working the floor. Defendants do not allow dancers to sit on customers' laps while working the floor.[37] Defendants do not allow dancers to take shots of alcohol while working the floor unless approved by the Club's manager, David Sullivan.[38] Defendants do not allow dancers to remove their bottoms while working the floor, and Defendants do not allow dancers to have their photographs taken on the floor.[39] Defendants also do not allow dancers to give private dances on the floor, but rather require dancers to conduct private dances on the lower level of the Club.[40]

Defendants have established 4 permissible types of private dances, as well as prices and time limits for each:

      a.    **Topless Dance:**  $20.00 (1 song);

      b.    **Topless and Bottomless Dance:**  $40.00 (1 song);

      c.    **Shower Dance:**  $160.00-170.00 (4 songs); and

      d.    **VIP Dance:**  $320.00 (8 Songs).[41]

Defendants do not allow dancers to offer any other types of private dances while working at the Club, nor do Defendants allow dancers to charge prices different from the Club's established rates, or to perform the private dances for a shorter or longer period of time.[42] Defendants employ bouncers who oversee the private dances to ensure dancers follow Club rules.[43]

---

[35] Jones Dec., ¶27; Morrissey Dec., ¶39
[36] Id.
[37] Jones Dec., ¶29; Morrissey Dec., ¶40
[38] Jones Dec., ¶30; Morrissey Dec., ¶41
[39] Morrissey Dec., ¶42
[40] Jones Dec., ¶33; Morrissey Dec., ¶42
[41] Jones Dec., ¶35-38; Morrissey Dec., ¶43-45
[42] Jones Dec., ¶36; Morrissey Dec., ¶44
[43] Morrissey Dec., ¶46

When a customer desires a private dance, the dancer takes the customer to the lower level of the Club.[44] The customer pays the established fee to the dancer.[45] Upon receipt, Defendants require the dancer to deliver the entire private dance fee to the bouncer in charge of the lower level.[46] The dancer must then sign her name in the black 3-ring binder maintained by the bouncer (which is the same used by dancers to clock-in) and to identify the type of dance and the fee.[47] The bouncer gives her a ticket or receipt, after which she may conduct the private dance.[48] If a customer desires a consecutive private dance, the dancer must repeat the process above.[49]

When a dancer finishes a private dance, she returns to the floor to solicit more private dances or to be called to dance on stage.[50] This process is repeated by all dancers throughout the night until the Club closes.[51]

At the end of the night, dancers return to the dressing room to change back into their street clothes and to gather their things.[52] The DJ or one of the bouncers then hands each dancer a white envelope.[53] Printed on the face of the envelope is each dancer's tip-out fee.[54] Defendants determine the amount of the tip-out fee, which depends on how busy the Club is each night. Every dancer must use her tip money earned on stage to pay the tip-out and return the envelope to the DJ or bouncer.[55] If a dancer cannot pay the tip out fee from her tips, she must come up with the difference, or the Defendants will not allow her to dance at the Club again until the tip-out is paid in full.[56]

After changing and paying their tip out, dancers return to the empty Club floor.[57] During the weekdays, the dancers are free to go home. The Club pays dancers every

---

[44] Jones Dec., ¶39; Morrissey Dec., ¶47
[45] Id.
[46] Jones Dec., ¶40; Morrissey Dec., ¶47
[47] Jones Dec., ¶41; Morrissey Dec., ¶48
[48] Jones Dec., ¶42; Morrissey Dec., ¶47
[49] Jones Dec., ¶43; Morrissey Dec., ¶49
[50] Morrissey Dec., ¶50
[51] Id.
[52] Jones Dec., ¶45; Morrissey Dec., ¶51
[53] Jones Dec., ¶46; Morrissey Dec., ¶51
[54] Jones Dec., ¶46; Morrissey Dec., ¶52
[55] Jones Dec., ¶43; Morrissey Dec., ¶53
[56] Jones Dec., ¶50; Morrissey Dec., ¶55
[57] Jones Dec., ¶51; Morrissey Dec., ¶56

6

Saturday night, however, and on those nights the dancers congregate on the main floor to wait to be paid.[58]

It usually takes the Defendants some time to prepare payment, and therefore the dancers wait at least an hour each Saturday night after the Club closes.[59] Once the Defendants are ready, Dancers are called to the upper level one-by-one.[60] If a dancer is called, she ascends the stairs to take a seat in the VIP Lounge in front of a desk.[61] From behind the desk, Club manager Dave Sullivan reviews the black 3-ring binder to determine how many private dances the dancer performed for the week.[62]

Mr. Sullivan pays each dancer 50% of the amount she collected over the week in private dances.[63] The Club takes the other 50%. This 50/50 split is the Club's rule, and it applies to all dancers.[64]

Defendants do not pay dancers any other money for their work at the Club.[65] Because Defendants classify all dancers as "independent contractors," they do not pay dancers minimum wage or overtime, nor do they provide dancers with a W-2 form at the end of the year.[66]

However, Defendants also do not provide dancers with receipts or with 1099 forms, despite their alleged independent contractor status.[67] All business is done with dancers on a cash basis only with handwritten records.

Defendants offer no alternative ways to make money at the Club. All dancers are scheduled the same way, paid the same way, and all dancers are subject to the same Club rules without exception or negotiation.[68]

---

[58] Jones Dec., ¶54; Morrissey Dec., ¶59
[59] Jones Dec., ¶56; Morrissey Dec., ¶60
[60] Jones Dec., ¶57; Morrissey Dec., ¶61
[61] Jones Dec., ¶59; Morrissey Dec., ¶61-63
[62] Id.
[63] Jones Dec., ¶61; Morrissey Dec., ¶62
[64] Jones Dec., ¶62, 63; Morrissey Dec., ¶63
[65] Jones Dec., ¶64; Morrissey Dec., ¶67
[66] Jones Dec., ¶65; Morrissey Dec., ¶65
[67] Jones Dec., ¶66; Morrissey Dec., ¶66
[68] Jones Dec., ¶67; Morrissey Dec., ¶67

## **LAW**
### CONDITIONAL CERTIFICATION STANDARD
*"A MODEST FACTUAL SHOWING"*

The collective action mechanism in the FLSA provides for "one lawsuit in which the claims of different employees, different in amount but all arising out of the same character of employment, can be presented and adjudicated, regardless of the fact that they are separate and independent of each other." *Shain v. Armour & Co.*, 40 F. Supp. 488, 490 (W.D. Ky. 1941).

The central question the Court must address in order to consider a conditional certification is whether potential plaintiffs are similarly situated enough so that a collective action becomes an efficient way to resolve legal disputes involving common claims. *Bitner v. Wyndham Vacation Resorts, Inc.*, 2014 WL 3698850. While the FLSA does not define "similarly situated," federal courts have developed a two-step approach. *Sjoblom v. Charter Communications, LLC*, 2007 WL 4560541.

In the first step, the plaintiff must show a "reasonable basis" for believing the plaintiffs are similarly situated. *Id.* The second step occurs at the close of discovery, typically upon a defendant's motion for "decertification", when the court determines whether the case should proceed to trial collectively. *Id.*

In determining whether plaintiffs have made the initial "reasonable basis" showing, courts rely on the complaint and any affidavits submitted. *Id.* Generally, courts do not need an overwhelming support to grant the motion. *Shabazz v. Asuion Ins. Serv.*, 2008 WL 170318. In fact, in *Young v. Cooper Cameron Corp.*, 229 F.R.D. 50, 55 (S.D.N.Y. 2005), the Court held one affidavit was sufficient when potential opt-ins held the same job and were all classified as exempt. To meet the standard for conditional certification, the plaintiffs need only to make a modest factual showing sufficient to demonstrate that they, and potential plaintiffs together were victims of a common policy or plan that violated the law. *Bitner v. Wyndham Vacation Resorts, Inc.*, 301 F.R.D. 354, 357 (W.D. Wis. 2014).

This standard is fairly lenient; it does not involve adjudicating the merits of claims, nor does it entail the kind of rigorous analysis typical of class certification. under Fed. R. Civ. P. 23. *Id*.

## ARGUMENT

Defendants' business is based on volume. The more stage dances and private dances performed, the more money the Defendants ultimately make off the dancers. By employing uniform rules, Defendants move dancers quickly and efficiently through their system, rotating dancers between dancing on stage and performing private lap dances in order to increase the Defendants' cut of the stage tips (tip-out) and their 50% cut of the private dance fees.

Defendants can only achieve this level of factory-like efficiency by treating each dancer similarly. As such, each dancer shares the exact same job duties with her peers: dance on stage, work the floor, and perform private dances.

All dancers are subject to the same policies, procedures and rules while performing these job duties. Dancers must arrive at the Club on-time in order to be ready and able to work at 5:00 p.m. Each dancer must clock-in before taking the floor. Each dancer must wait her turn to be called to the stage to dance, and all dancers must dance fully nude on stage for only 2 songs during the weekdays and 3 songs during the weekends.

Requiring full nudity serves to increase the number of tips the dancer receives (which Defendants pilfer) and to further entice customers to purchase private dances when the dancer returns to the floor. Any dancer not complying with the full nudity rule is fined $25.00. Similarly, restricting stage dances to standardized time limits serves to quickly rotate dancers back onto the floor to solicit private dances that are more lucrative for the Defendants.

Defendants also employ uniform rules for dancers working the floor, all of which serve to ensure dancers are constantly soliciting private dances from customers when they are not dancing on stage. Dancers must not drink shots and become drunk on the floor—which might distract them from making money for the Defendants. Dancers must not sit on customers' laps or remove their bottoms on the floor—as these are the activities being

9

sold with a private dance. Finally, dancers must not perform private dances on the floor, as private dances must be accounted for on the lower level of the Club in order for the Defendants to collect the fees. All of these floor rules are applied uniformly to keep dancers moving through the system and to ensure customers remain interested in buying private dances.

Uniform rules also ensure private dances are conducted quickly, that the fees are collected and handed over to the Club, and that the dancer returns to the stage or floor to make more money for the Defendants. For instance, all dancers must bring customers to the lower level for private dances. All dancers must give the customer's payment to the Club. All dancers must sign the Club's book to perform the dance, and all dancers must perform private dances only for the allotted length of time.

Defendants also use uniform policies and procedures to pilfer dancers' tips and private dance fees. All dancers must pay tip-out in the same way and at the same time. Defendants establish the tip-out based on how busy the Club is, and if any dancer cannot pay the tip-out from her tips, she must come up with the money in order to work at the Club again. All dancers must remit their private dance fees to the Club, and at the end of the week, the Club takes half that money. There are no negotiations, and there are no exceptions.

Finally, Defendants treat all dancers as independent contractors. No dancer receives minimum wage or overtime, and no dancer receives a W-2 form at the end of the year.

By employing these rules uniformly across the board, Defendants are able to increase the money generated by the dancers, which ultimately means increased Club profit. But these same rules that create factory-like efficiency at the Club also serve to show *that all dancers are similarly-situated victims of the same common policy or scheme*, making conditional certification appropriate.

JUDICIAL NOTICE TO CLASS IS APPROPRIATE

In FLSA actions, the Court has a managerial responsibility to oversee the party responsible for joining additional parties, ensuring the task is accomplished in an efficient and proper manner. Hoffman-La Roche, 493 US at 170. Court-approved notice ensures class members receive timely, accurate, and informative information pertinent to the case so that they can make informed decisions. Id. Attached as **Exhibit A** is the Plaintiffs' proposed notice to the collective for the Court's review.

## CONCLUSION

Plaintiffs have made a modest factual showing that they are similarly situated. Plaintiffs respectfully request the Court (1) preliminarily authorize this case to proceed as a collective action; (2) authorize Plaintiffs' proposed notice to be mailed to potential opt-ins; and (3) order Defendants to produce within ten (10) days a list of dancers that worked at the Club during the relevant statutory period.

Dated this 18th Day of August, 2017.

**MOEN SHEEHAN MEYER, LTD.**

/s/ Justin W. Peterson
Justin W. Peterson (SBN 1087366)
Nathan P. Skemp (SBN 1099445)
Attorney for Plaintiff
201 Main Street, Suite 700
La Crosse, WI 54601
(608) 784-8310
jpeterson@msm-law.com