UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
_____

<u>Teriana Jones and Bethany Morrissey</u>
On behalf of themselves and a class
of employees and/or former employees
similarly situated,

      Plaintiffs,

        vs.

Cruisin' Chubbies Gentlemen's Club, et al.

      Defendants.

Case No:    17-CV-125

---

**DECLARATION OF BETHANY MORRISSEY
IN SUPPORT OF PLAINTIFFS' MOTION FOR CONDITIONAL
CERTIFICATION AND JUDICIAL NOTICE**

---

I, Bethany Morrissey, declare, under penalty of perjury pursuant to 28 U.S.C. § 1746, as follows:

    1.    That I am a former dancer at the Defendants' Cruisin' Chubbies Gentlemen's Club and Resort (hereinafter the "Club").

    2.    That the purpose of this declaration is to show the Court that I and other exotic dancers at the Club are victims of the same common policies and procedures that violate state and federal wage and hour laws.

    3.    That I began working for the Defendants as an exotic dancer in or around 2011 and worked at the Club until I was discharged in 2016.

    4.    That in the course of my employment at the Club, I became very familiar with the Club's policies, procedures and rules with regards to dancers, how dancers are scheduled, how dancers must conduct their work, and how dancers are ultimately paid for their work.

    5.    The Club is open roughly 364 days in a year, closing for Christmas.

6. Each day, the Club opens at 5:00 p.m to the public.

7. On the weekday nights, Sunday - Thursday, the Club is open for 10.5 hours, closing at 2:00 a.m.

8. On weekend nights, Friday - Saturday, the Club is open for 11 hours, closing at 2:30 a.m.

9. Defendants' employee, James Ewert, is in charge of scheduling enough dancers to work the various weekday and weekend shifts at the Club.

10. On the weekday nights, Defendants typically schedule around 12 dancers a night during the summer months, which are busier, and 8-10 dancers during the winter months, which are slower. On the weekend nights, Defendants schedule 18-28 dancers during the summer months and 14-18 dancers during the winter months.

11. Because the weekends are busier at the Club than the weekdays and therefore more desirable for the dancers, the Defendants have a rule requiring that any dancer who wants to work on the weekends must work two days during the week.

12. If a dancer wants to work at the Club, she contacts James via telephone or text to get on the schedule.

13. If James determines the Club has enough dancers for the week, he will turn dancers away.

14. If the Club is in need of dancers for any given night, however, James will contact dancers to schedule them to cover the shifts.

15. The Club requires dancers to be on the floor, fully ready to work, at 5 p.m.

16. The Club requires dancers to wear revealing two-piece bikini-like outfits and high heels.

17. Dancers require a certain amount of preparation in order to be ready to dance: dancers must do their hair and make-up, change into their outfits, and apply perfume.

18. As such, dancers do not show up to the Club at 5:00 p.m. ready to dance.

19. Instead, dancers arrive at the Club around 4:00 p.m. to 4:15 p.m. in order to get ready.

20. The Club has a changing room in the back where the dancers get ready together.

21. James maintains a black notebook binder at the entrance of the Club containing spreadsheets for each night of business.

22. When the dancers are ready, they must clock in by signing the Club's black notebook binder, writing their names and the exact time they clock in.

23. If a dancer fails to clock in for her shift by 5:00 p.m., the Defendants increase her nightly "tip-out" fees, which I will explain in more detail below.

24. The Defendants increase the dancers' tip-out fees by $10.00 for each hour, or portion of an hour, she is late. Therefore, if a dancer clocks in between 5:00 p.m. and 6:00 p.m., the Defendants increase her tip-out fees by $10.00; if she clocks in between 6:00 p.m. and 7:00 p.m., the Defendants increase her tip-out by $20.00, and so on and so forth.

25. Once a dancer has clocked in, she moves onto the floor for further instruction.

26. The "floor" means the area of the Club where the customers are, consisting of the bar, bar seating, and tables and chairs around the Club's various stages and dancing poles.

27. The Club's building has three levels where dancers work: the main (ground level) floor, which has two three-pole stages, an upstairs "VIP longue" with a one-pole stage, and a downstairs area, where private dances are conducted. *See* Club photographs attached as **Exhibits A-H** for the Court's reference.

28. When all the dancers are on the floor at the beginning of the night, the Club DJ announces which dancers will take the stage first.

29. The DJ determines the order of the dancers dancing on stage for the duration of the night. The dancers do not have any say in when they will dance on stage.

30. During the weekend nights, Defendants require each dancer to dance onstage for two songs per pole during her rotation. The stage has multiple poles.

31. During the weekdays, Defendants require dancers to dance on stage for three songs per pole during her rotation.

32. Defendants require all dancers to remove their tops and bottoms while dancing on stage.

33. All dancers remove their tops while dancing at the Club.

34. There are some dancers, however, who refuse to remove their bottoms.

35. If a dancer refuses to remove her bottom, the Defendants increase levy a fine of $25.00 at the end of the night. The fine is paid out from our stage money.

36. Dancers earn money on stage by collecting dollar tips that customers drop on the stage or give her while she is dancing.

37. Defendants allow dancers to keep all of their tips they receive from stage dancing, subject to the nightly required tip-out.

38. When a dancer is not dancing onstage, Defendants require her to "work the floor," soliciting private dances with customers. This involves talking with customers, flirting with them and otherwise trying to entice them to pay for a private dance.

39. Defendants have strict rules regarding how dancers must work the floor.

40. Defendants do not allow dancers to sit on customers' laps while working the floor.

41. Defendants do not allow dancers to drink shots of alcohol while working on the floor, unless the Club manager, Dave Sullivan approves.

4

42. While working the floor, Defendants do not allow dancers to remove their bottoms, have their pictures taken, or give private dances on the floor, but rather require dancers to conduct any private dances on the lower level of the Club.

43. Defendants have established four types of private dances a dancer may perform, and prices for each:

    A. Topless Private Dance - $20.00

    B. Topless and Bottomless Private Dance - $40.00

    C. Shower Dance - $160.00

    D. VIP Dance - $320.00

44. Defendants do not allow dancers to offer any other types of private dances or charge or negotiate our own rates.

45. Defendants have also established time limits for each type of private dance:

    A. Topless Private Dance – 1 song

    B. Topless and Bottomless Private Dance – 1 song

    C. Shower Dance – Roughly 15 minutes or approximately 4 songs

    D. VIP Dance – 8 songs

46. The Defendants employ bouncers to oversee the private dances to ensure dancers are following Club rules.

47. The customer pays the bouncer or dancer each private dance fee when they arrive at the lower level of the Club.  The usual process is that when someone requests a private dance, the dancer walks him to the table downstairs where a bouncer is standing. The bouncer then takes the money in exchange for a ticket.

48. The Defendants require the dancer to then sign her name in the black binder maintained by the bouncer, which is the same binder used to clock in, and to identify on the spreadsheet what type of dance she is performing and the price.

49. If a customer desires a consecutive private dance, the dancer must repeat the process above.

50. When a dancer finishes the private dance, she returns to the floor to solicit more private dances or to be called onstage by the DJ.

51. At the end of the night, the DJ then hands each dancer a white envelope in which the dancers will place their tip outs and return the envelope to the DJ.

52. Each dancer's tip-out fee is written on the front of the white envelope. The usual amount for a weekday tip-out is $22. The weekend tip-outs range from $50-$110, depending upon how busy the Club is.

53. Defendants require dancers to use their tip money earned while dancing onstage to pay the tip-out fee.

54. If a dancer cannot pay the tip-out, she must come up with her own money to pay it.

55. If a dancer does not pay the required tip-out, the Defendants do not allow her to dance again at the Club until she does pay it.

56. After changing and paying their tip-out at the end of the night, dancers return to the floor. The Defendants do not allow dancers to leave the Club until all the customers have left the building and parking lot, however.

57. Once all the customers have left the Club and parking lot, bouncers escort dancers to their cars or rides.

58. The Defendants pay dancers for their weekly work on Saturday nights or on the last night the dancers worked that week.

59. On Saturday nights, after the Club closes and the dancers have paid their tip-outs and changed, the dancers congregate on the main level floor.

60. The dancers must wait on the main floor until the Defendants are ready to pay them, usually about an hour.

61. When Defendants are ready to pay us, they will call us to the upper level one at a time where Dave Sullivan, the Club manager, and potentially other Defendants are waiting.

62. Dave uses the black binder to review the number and types of dances performed by the dancer, and pays her 50% of the fees collected for each dance.

63. The Defendants keep the other 50% of the money, depositing it into a blue bank bag.

64. The dancers do not have any say in the pay-out and are not paid any other money or remuneration.

65. Defendants classify dancers as independent contractors, and therefore do not pay dancers minimum wage or overtime, nor do they give dancers a W-2 form at the end of the year.

66. But Defendants also do not provide dancers with receipts or a 1099 form either.

67. There are no alternative ways to make money at the Club. All dancers are scheduled the same way, paid the same way, and all dancers are subject to the same Club rules without exception or negotiation.

68. Because the Defendants treat dancers uniformly, and because all dancers are subject to the same unlawful Club rules and practices, I believe I can represent the interests of all similarly situated dancers, and therefore request that the Court grant Conditional Certification of this case.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the forgoing is true and correct.

Dated this 18th day of August, 2017     /s/ Bethany Morrissey_____
                                                    Bethany Morrissey