**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WISCONSIN**
_____

Teriana Jones and Bethany Morrissey
On behalf of themselves and a class                Case No:        17-CV-125
of employees and/or former employees
similarly situated,

      Plaintiffs,

              vs.

Cruisin' Chubbies Gentlemen's Club, et al.

      Defendants.
_____

**BRIEF IN SUPPORT OF MOTION FOR**
**RULE 23 CLASS CERTIFICATION**
_____

This case is perfectly suited for class certification as it meets all Rule 23 requirements.  Numerosity is satisfied, as there are at least 94 dancers in the class. Defendants push these 94 dancers through their club in assembly-line fashion, subjecting them *all* to the same set of rules, classifying them *all* as independent contractors, and refusing to pay them *all* minimum wage and overtime.  As such, there are questions of law and fact common to all class members, and the class representatives have the same claims against the defendants as the rest of the class.  The class representatives will fairly and adequately protect the interests of the class, as they are all subject to the same unlawful scheme.

Because each dancer shares common claims with the class that are based on the same set of common facts and applicable law, there is a danger that individual litigation would (1) create inconsistent standards for the defendants and (2) have a binding effect on

1

other dancers as they pursue their claims.  As a result, a class action is superior to individual litigation in this case, and the Court should grant certification.

## PROCEDURAL HISTORY AND FACTS

This is a collective and class action for minimum wages and overtime brought by Teriana Jones and Bethany Morrissey on behalf of a group of exotic dancers against *Cruisin' Chubbies Gentlemen's Club* (the "Club") in Wisconsin Dells, Wisconsin.

On August 18, 2017, plaintiffs moved the Court for Conditional Certification. (Dkt. #34).  In support of its motion for conditional certification, Plaintiffs' brief provided a detailed description of Defendants' factory-like operation. (Dkt. #35).  For sake of brevity, that description is incorporated herewith by reference, but can be summarized as follows:

In short, Defendants require dancers to show up to the Club and take the floor at a specified time.[1]  Once on the floor, Defendants call some of the dancers to dance on stage and collect tips.[2]  Those dancers not selected for stage are required to "work the floor," soliciting private dances with customers.[3]  Defendants require dancers to follow specific rules while working the floor that are designed to prevent the dancers from becoming distracted and to keep the process moving.[4]  If a private dance is arranged on the floor, the dancer takes the customer to the Club's lower level, performs the dance under Club

---

[1] Jones Dec.¶5; Morrissey Dec.¶19; Roe 1 Dec.¶5; Roe 2 Dec.¶4; Roe 3 Dec.¶4; Roe 4 Dec.¶5; Roe 6 Dec.¶5; Roe 7 Dec. ¶4;
[2] Jones Dec.¶20; Morrissey Dec.¶28; Roe 1 Dec.¶8; Roe 2 Dec.¶5; Roe 3 Dec.¶6; Roe 4 Dec.¶7; Roe 6 Dec.¶6; Roe 7 Dec.¶6;
[3] Jones Dec.¶27; Morrissey Dec.¶38; Roe 1 Dec.¶11; Roe 2 Dec.¶9; Roe 3 Dec.¶8; Roe 4 Dec.¶9; Roe 6 Dec.¶9; Roe 7 Dec.¶12;
[4] Jones Dec.¶28; Morrissey Dec.¶39; Roe 1 Dec.¶12; Roe 3 Dec.¶9; Roe 4 Dec.¶9; Roe 6 Dec.¶13; Roe 6 Dec.¶10

supervision, and remits the money collected to the Club.[5]  Defendants establish the price and duration of the private dances.[6]

After the performing a private dance, the dancer returns to the stage or floor, where she is required to move through the cycle again.[7]  By continuously pushing the dancers through this system, Defendants are able to maximize the money generated for the Club. At the end of each night, Defendants require dancers to pay a "tip-out" fee from their stage tips, the amount of which varies according to how busy the Club is during any given night.[8] Defendants increase "tip-out" fees for dancers who violate Club rules—especially if a dancer is late for work.[9]  At the end of the week, dancers must stay late to collect their 50% portion of the private dance fees they collect, which is also subject to deductions for penalties, etc.[10]

After receiving Plaintiffs' brief, Defendants conceded conditional certification on September 8, 2017 without filing a response. (Dkt. #52). The Court granted conditional certification on October 10, 2017.  (Dkt. #58).

The Plaintiffs' brief on conditional certification was supported by the declarations of the named plaintiffs, Teriana Jones and Bethany Morrissey.  Since then, six dancers have opted-in to the litigation, providing the appended declarations confirming without variance the description of Defendants' factory-like operation above.

---

[5] Jones Dec.¶34-43; Morrissey Dec.¶43-50; Roe 1 Dec.¶10; Roe 2 Dec.¶11, 12; Roe 4 Dec.¶10; Roe 6 Dec.¶ 10; Roe 7 Dec.¶14;
[6] Id.
[7] Id.
[8] Jones Dec.¶45-50; Morrissey Dec.¶52-56; Roe 1 Dec.¶16; Roe 3 Dec.¶7; Roe 4 Dec.¶8; Roe 6 Dec.¶12; Roe 5 Dec.¶16; Roe 6 Dec.¶13
[9] Id.
[10] Jones Dec.¶54-63; Morrissey Dec.¶58-63; Roe 1 Dec.¶19; Roe 3 Dec.¶14; Roe 4 Dec.¶13; Roe 6 Dec.¶14; Roe 5 Dec.¶18; Roe 6 Dec.¶14

## **ARGUMENT**

Before certifying a class, the "judge must receive enough evidence, by affidavits, documents, or testimony, to be satisfied that each Rule 23 requirement has been met." *In re Initial Pub. Offering Sec. Litg. ("IPO"),* 471 F.3d 24,41 (2d Cir. 2006).  Deciding the merits of the case is not a proper focus at this early stage of the proceedings. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177–78, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974) (there is "nothing in either the language or history of Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action"); *Castano v. American Tobacco Co*., 84 F.3d 734, 744 (5th Cir.1996) (*Eisen* "stand[s] for the unremarkable proposition that the strength of a plaintiff's claim should not affect the certification decision"). Courts apply the same analysis to both FSLA and state law based requests for classification. *United Food and Commercial Workers Union, Local 1473 v. Hormel Foods Corp.* 367 Wis. 2d 131, 152 N.W. 2d 99,109 (2016).

### I.     Plaintiffs Meet Requirements of Rule 23(a).

In order to proceed as a class action, plaintiffs must show (A) that the class is so numerous that joinder of all claims is impractical; (B) that there are questions of law or fact common to the class; (C) that the claims of the representative parties are typical of the claims of the class; and (D) that the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23

### A.  The Numerosity Requirement is Met with 94 Dancers.

Plaintiffs' must show the class is so numerous that joinder of all members is impractical. Fed. R. Civ. P. 23(a)(1). Numerosity is *presumed* at a level of 40 members. *Consol. Rail Corp v. Town of Hyde Park*, 47 F. 3d 473, 483 (2d Cir. 1995).

Defendants provided a list of all dancers who worked at the Club within the last three years in their initial disclosures and in further discovery. (Peterson Dec. ¶8)  Thus far, **94 dancers** have been identified. (Peterson Dec.¶9)  It would be impractical and a waste of judicial resources to litigate 94 individual claims that are based on the same set of facts in the same applicable law.

### B.  There are Common Questions of Law and Fact Because Each Dancer is Subject to the Same Unlawful Misclassification and Payment Scheme.

Rule 23(a)(2) requires that there are questions of law or fact common to the class. Generally, "a common nucleus of operative facts" satisfies the commonality requirement. *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). Courts should "liberally construe the commonality requirement." *Trief v. Dun and Bradstreet Corp.* 144 F.R.D. 193, 198-99 (S.D.N.Y 1992).  Commonality does not mandate that all class members make identical claim and arguments, only that the class-wide proceeding will generate common answers to those questions. *DeKeyser v. Thyssenkrupp Waupacal Inc.* 314 F.R.D. at 453

Without exception, Defendants misclassify *all* dancers as independent contractors—which is the primary common question of law in this litigation.  By uniformly categorizing all dancers as independent contractors, Defendants are precluded from arguing dancers cannot collectively challenge that classification. *Delgado v. Ortho-McNeil. Inc.* No. 07-263, 2007 WL 2877238.  In *Nerland v. Caribou Coffee Co. Inc.* 564 F. Supp. 2d

1010, 1024 (D. Minn. 2007),  the court found it disingenuous for Defendant to collectively decide all "employees" are exempt from overtime compensation without individual inquiry while then also claiming the plaintiffs cannot proceed collectively to challenge the exemption.

To distinguish employees from independent contractors, courts look to the "economic realities" of the parties' relationship.  *Solis v. Int'l Detective & Protective Serv., Ltd.*, 819 F. Supp. 2d 740, 749 (N.D. Ill. 2011).  This test analyzes whether individuals are "actually dependent upon the business to which they render service," and requires analysis of: (1) the nature and degree of the alleged employer's control over the manner in which the work is to be performed; (2) the alleged employee's opportunity for profit or loss depending upon his or her managerial skill; (3) the alleged employee's own investment in equipment or materials required for the work or his or her employment of workers; (4) whether the service rendered requires a special skill; (5) the degree of permanency and duration of the working relationship; and (6) the extent to which the service rendered is an "integral part" of the alleged employer's business. (*Id.*)

Here, examination of these factors will apply equally to every member of the proposed class in the same way, as Defendants marshal each dancer through its factory-like system, moving her between dancing on stage, working the floor, and providing private dances in an endless rotation until she must pay her "tip-out" at the end of the night and collect her 50% of the private dance fees at the end of the week.

The outcome of this fundamental *independent contractor vs. employee* inquiry will help determine the other common questions of law for the class, i.e. (1) whether the class members are entitled to minimum wage and overtime; (2) whether the nightly "tip-outs"

6

are contrary to law; (3) whether Defendants are unjustly enriched by the dancers' work, and (4) whether Defendants are liable for liquidated damages and attorney's fees.

Common questions of fact for the dancers will include whether and to what degree Defendants' uniform system exerts control over (1) the dancers' schedules, (2) what dancers wear during their performances, (3) how dancers perform their dances; and (4) the prices dancers charge for private dances.  Furthermore, common questions of fact will include whether dancers own their own business or exercise their own business judgment in their work.

A class-wide proceeding will determine common answers to these common questions.

### C.     Typicality.

Typicality under Rule 23(a)(3) is satisfied when "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Barnes v. United States*, 68 Fed.Cl. 492, The "analysis of commonality and typicality tends to merge because both serve as guideposts for determining whether the named plaintiff's claim and the class are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Falcon*, 457 U.S. at 157 n. 13, 102 S.Ct. 2364.  The focus is on whether the representative Plaintiffs claim is based on the same legal theory and arises from the same course of conduct that gives rise to the claim of the other members of the proposed class.  De La *Fuente v. Stokely-Van Camp, Inc*., 713 F. 2d 225, 232 (Seventh Cir. 1983).

Here, plaintiffs' original motion for conditional certification was supported only by the declarations of the named plaintiffs, Teriana Jones and Bethany Morrissey.  At the time,

there was no order allowing dancers to opt-in to the litigation anonymously; so no other dancer declarations were submitted in support of the motion.

In their declarations supporting conditional certification, the named plaintiffs described the unlawful conditions at the Club giving rise to their claims for minimum wage, overtime, and restitution of their tip money.

It is significant that the 6 dancers who have since opted-in to the litigation are telling the exact same story originally illustrated by the named plaintiffs in their conditional certification declarations, namely that:

(1) Dancers' schedules must be approved by the Club.

(2) Dancers are required to work a number of weekdays before the Club will schedule them for a weekend shift.

(3) Dancers are required to arrive at their shift by 4:00 p.m., an hour before The Club opens.

(4) If dancers arrive late, they are fined by the Club.

(5) Dancers are required to dance on stage for a length of time determined by the Club and in a rotation determined by the Club. Dancers are required to remove all clothes on stage.

(6) Dancers are required to solicit customers to pay for private dances until it is their turn again to go back on stage.

(7) Dancers follow the same rules of conduct while soliciting private dances.

(8) Dancers are required to process payment for private dances in the same manner.

(9) The Club sets prices and length of all private dances, which all dancers must abide by.

(10) The Club supervises private dances to ensure dancers are abiding by the rules.

(11) Dancers are required to stay past closing and wait for the parking lot to clear before being allowed to leave the Club.

(12)  Dancers must abide by the uniform nightly tip-out scheme and all pay the same amount, subject to additional fines.

(13)  All dancers must abide by the same weekly payout scheme which is a 50% deduction of private dance fees, subject to fines

The declarations of the opt-in dancers line-up with the declarations of the named plaintiffs, and the named plaintiffs share the same claims as the other class members due to Defendants' uniform treatment of all the dancers.  Those claims are based on the same legal theories (e.g. employee status, entitlement to minimum wage and overtime, etc.) and are based on the same unlawful conduct on the part of the Defendants.

As such, the claims of the named representative plaintiffs are typical of the entire class.

## D.    Fair and Adequate Representation.

The representative plaintiffs must fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4).  "In order to be an adequate representative, the named plaintiff must be part of the class and possess the same interest and suffer the same injury as the class members." *Conrad v. Boiron, Inc*. 869 F.3d 536, 98.

Teriana Jones and Bethany Morrissey will adequately and faithfully prosecute and protect the interest of the class members in this case.  Both representatives were brave enough to come forward to pursue these claims on behalf of the dancers despite the dangers of doing so in an industry shrouded by secrecy and suppression. (Peterson Dec. ¶10)  Both representatives have spoken with their undersigned attorneys, understand their role as class representatives, and both have already devoted countless hours to assisting counsel in prosecuting the class's claims. (Peterson Dec. ¶14)  They both possess essential knowledge of the facts and have used that knowledge to push this case forward, not only for

9

themselves, but also for the dancers who are too scared to speak against the Defendants. (Peterson Dec. ¶13)

As for Plaintiff's counsel, they are experienced in wage and hour class and collective actions against exotic dance clubs, and the difficulties associated therewith. (Peterson Dec. ¶5)   They have secured favorable outcomes for dancers in the past, and fully intend to prosecute this case to its greatest extent in the interest of the class. (Peterson Dec. ¶6)

## II.      Plaintiffs Meet Requirements of Rule 23(b).

Rule 23(b) identifies the types of class actions that may be maintained if the prerequisites in set forth in Rule 23(a) are met.  These include situations where individual litigation would create a risk of (1) inconsistent adjudications that might create differing standards for the defendants and (2) adjudication that would have a binding effect on subsequent litigants as they pursue their own claims.  These also include situations where the questions of law or fact common to class members predominate over any questions affecting only individual members.  Only one of the criteria in Rule 23(b)(1)-(3) must be met before the case can proceed as a class action.

### A.      Individual Litigation Creates a Risk of Inconsistent and Binding Adjudications.

Separate actions by each of the 94 dancers would create a risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendants.

The issues raised in this litigation strike at the very heart of Defendants' business model.  Defendants have built their business treating dancers as independent contractors who are not entitled to minimum wage or overtime.  The appended declarations show that

the Defendants' system for working the dancers and controlling them is elaborate and geared towards generating the most income for the Club is possible.

This litigation seeks to disrupt the Defendants' system, as it alleges dancers are employees entitled to minimum wage and overtime. This issue should be decided on a class-wide basis. If Plaintiffs win the class action, Defendants will have to change their business model. If the class action fails, however, Defendants will carry on his usual.

The problem comes when dancers bring individual claims. If one dancer brings a claim against the Club and is found to be an employee, and another dancer brings a claim and is found to be an independent contractor, the Defendants will have difficulty reconciling the findings, and, in particular, Defendants will have difficulty implementing a system that can efficiently provide payment for both employees and independent contractor dancers. This issue should be an "all-or-nothing" proposition—which can only be done by class action.

Furthermore, individual litigation of these claims carries the risk of establishing adjudications of issues that will become binding on subsequent litigants. Again, the primary issue is whether these dancers are independent contractors or employees. Once this issue is decided for the first time for a single dancer, it will affect subsequent dancers who bring similar claims, even though they did not have the opportunity to represent their interests in the first litigation.

As such, it is in both parties' best interest that this matter proceed as a class action because of the risk of inconsistent and binding adjudications under Rule 23(b)(1)(A) and (B) if individual claims are brought.

**B.**     **Common Questions of Law and Fact Predominate and a Class Action is the Superior Method to Adjudicat this Case.**

Rule 23(b)(3) requires that the common questions of law and fact predominate over any individual questions, and that a class action be superior to other methods of adjudication. "The class-wide issues must also predominate, a condition that occurs if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Barnes v. U.S.,* 68 Fed.Cl. 492, (2005).

The class members' common questions of law and fact have already have been set forth above.  In general, the dancers' status as either independent contractors or employees, and the facts leading up to that determination, present overarching issues upon which this litigation turns.

Defendants will undoubtedly argue that the class cannot be certified because each dancer will be entitled to a different amount of damages based on how often she worked at the Club, and that these individual determinations of damages will predominate over common issues of the class.

This argument fails because liability is the common question threading all dancers together.  Courts particularly "focus on the liability issue ... and if the liability issue is common to the class, common questions are held to predominate over individual questions." *Dura-Bilt Corp. v. Chase Manhattan Corp*., 89 F.R.D. at 93.

Of course, the calculation of damages would be easier if Defendants had kept better records, but these difficulties are not a bar to certification.  On the contrary, as Plaintiffs are allowed to make good faith estimates in such a situation. *Reich v. New England S.*

12

*Telecomm. Corp.*, 121 F.3d 58, 66-67 (2d Cir. 1997) (allowing representative testimony from sample of employees to prove prima facie case that employer violated the FLSA due to defendant's failure to maintain accurate employment records); see also *Long v. Trans World Airlines, Inc.,* 761 F. Supp. 1320, 1323 (N.D. Ill. 1991) (permitting sampling of Rule 23 class members with respect to discovery on damages and stating that "damages in class actions (like other cases) need not be 100 percent accurate").

Even without any records, arriving at an estimated damages calculation can be accomplished by fairly a simple formula supported by party testimony:

> (hours per shift) x (minimum wage) x (shifts per night) x (nights per year) x (3 year SOL) x (double damages) + attorney fees = gross damages

Overtime can be calculated in this equation by determining the minimum number of dancers required to work the shifts in any given week.  Once an estimated damages figure is reached, it can be divided among the class members, pro-rata, based on an extrapolation of the data Defendants currently have (which they should be creating and preserving at this point), and/or records dancers keep.  Thus, the damages issue is easily manageable and does not predominate over the common question of liability within this case.

The second part of the 23(b)(3) analysis is a relative comparison examining whether "the class action device is superior to other methods available for a fair and efficient adjudication of the controversy." *Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968). Rule 23(b)(3) sets forth a non-exclusive list of factors pertinent to judicial inquiry into the superiority of a class action, including: whether individual class members wish to bring, or have already brought, individual actions; the desirability of concentrating the litigation of

the claims in the particular forum; and the difficulties of managing the case as a class action. Fed. R. Civ. P. 23(b)(3).

Here, there is no question that a class action is the superior method of adjudication. The fact is, Defendants subject dancers to an environment of intimidation and exploitation. When this complaint was filed, only Teriana Jones was brave enough to stand up to the Defendants. Thereafter, Bethany Morrissey joined in, and after that, other dancers began opting- in to the litigation and making inquiries with counsel.

In other words, most of the dancers would never make a claim against the Club if a couple of dancers did not have the grit to bring a class action claim. Without a class action, their claims would never been heard. These dancers do not wish to put themselves in the line of fire like the named plaintiffs. They are happy to relinquish control of the case to the representatives and the class counsel, as the claims brought are comprehensive and all-inclusive. Moreover, and for the reasons identified above, the issues raised in this case should be decided on a class-wide basis so that every party knows where they stand when the dust clears. A single forum is better than many, not only for the sake of judicial economy, but also so that the parties do not have to have the issues tried and retried, if multiple claims do arise.

A class action is the most efficient way to conduct this litigation, and the Court should certify.

## CONCLUSION

Defendants have a common and class-wide policy of misclassifying dancers as independent contractors, failing to pay the minimum wage, and requiring Plaintiffs to pay unlawful fines and tip-outs in order to work. The issue of classification predominates all

others, as this case contains many questions of law and fact common to each of Defendants'

dancers.  For these reasons, class-wide adjudication is both appropriate and necessary.

Accordingly, Plaintiffs respectfully request that this Court grant Plaintiffs' Motion under

Federal Rule of Civil Procedure 23 for certification of the proposed class, designate the

named Plaintiffs as Class Representatives, and designate Plaintiffs' Counsel as Class

Counsel.

      Dated this 5th Day of January, 2018.

MOEN SHEEHAN MEYER, LTD.

/s/ Nathan P. Skemp

Justin W. Peterson (SBN 1087366)
Nathan P. Skemp (SBN 1099445)
Attorney for Plaintiff
201 Main Street, Suite 700
La Crosse, WI 54601
(608) 784-8310
jpeterson@msm-law.com
nskemp@msm-law.com

**Certification of Service**
      I hereby certify that on January 5, 2018 , I electronically filed the foregoing with the Clerk of Court using the ECF system which will send notification of such filing to the following: Tony Steffek, and I hereby certify that I have mailed by United States Postal Service the document to the following non ECF parties: none.

/s/ Nathan P. Skemp
Nathan P. Skemp