UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

---

Teriana Jones, et. al.,

                Plaintiffs,

      v.

Edge of the Dells, Inc., et al.

                Defendants.

Case No.  17-cv-00125-jdp

Honorable James D. Peterson

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION FOR DECERTIFICATION**

---

This case is all about money.  Specifically, money the plaintiffs believe they are owed by the defendants over exotic dances the plaintiffs performed at Cruisin' Chubbys Gentlemen's Club in Wisconsin Dells, Wisconsin.  The plaintiffs make this very clear – the first paragraph of their First Amended Complaint states that this action is for "unpaid wages and overtime."  (Dkt. 29, ¶ 1.  Which is common – many, if not most, lawsuits are about money in some way, shape or form.

Where this lawsuit differs, though, is that the plaintiffs are trying to receive payments from the defendants through the bully tactics of a class action lawsuit.  The facts central to this lawsuit, however, make clear that a collective action under the Fair Labor Standards Act is not the proper vehicle for resolving the plaintiffs' claims.  Rather, claims such as the plaintiffs are appropriately tried via direct action lawsuits wherein all plaintiffs individually appear and present evidence supporting their claims.  That is what should happen here.

As discussed in extensive detail below, the plaintiffs cannot satisfy their burden of demonstrating that this action may be certified as a collective action under the FLSA.

Specifically, the plaintiffs are not similarly situated with each other, and the requirements for class actions under Federal Rule of Civil Procedure 23 cannot be met. The Court, therefore, should decertify the conditional class previously approved in this matter.

## PROCEDURAL HISTORY

On February 22, 2017, Jones filed her Complaint asserting wage claims under the FLSA and state law on behalf of herself and a putative collective class (and a Rule 23 class for their state law claims. (Dkt. #1.) Therein, she alleged that all of the defendants operate a "Resort" consisting of "an exotic nightclub, bar, restaurant and adult campground" (Dkt. #1, ¶ 7) and that all of the defendants employed Jones and "other women (collectively "Dancers") to dance for and spend time with the Defendants' customers at the Resort's exotic nightclub and adult campground." (Dkt. #1, ¶ 12.) She further alleged that the defendants required her and other women to sleep at the defendants' "Resort". (Dkt. #1, ¶ 27.) She claims that the defendants did not pay her and other women minimum wage for work they performed at the exotic nightclub and adult campground or for the time she and others were required to sleep at the alleged "Resort." (See Dkt. #1, ¶¶ 42, 45.)

The defendants answered Jones' Complaint on April 7, 2017. (Dkt. #19.) The defendants denied that any ever employed Jones or anyone else as an exotic dancer (or otherwise). (Dkt. #19, ¶ 12.) They further denied any liability to Jones or anyone else is this matter. (See Dkt. #19, ¶¶ 41-59.) As its affirmative defenses to the Complaint, the defendants asserted, in pertinent part, that this matter is not suited for collective or class action proceedings under either the FLSA or Federal Rule of Civil Procedure 23. (Dkt. #19, ¶¶ 61-64.)

Jones filed a First Amended Complaint on May 23, 2017, which added Morrisey as a named plaintiff and Southern Heights, LLC, as a defendant. (Dkt. #29.) Otherwise, the First

Amended Complaint was substantially the same, if not identical, to the original Complaint.  (See Dkt. #1, Dkt. #29.)  The defendants answered the First Amended Complaint on June 12, 2017, and asserted the same affirmative defenses.  (Dkt. #32.)

On August 18, 2017, Plaintiffs filed their Motion for Conditional Class Certification and Judicial Notice.  (Dkt. #34.)  To avoid the expense of briefing, the defendants stipulated to conditional certification and an opt-in notice to be sent to "all present and former exotic dancers who performed at Cruisin' Chubbys Gentlemen's Club in Wisconsin Dells, Wisconsin, at some time since February 22, 2014."  (Dkt. #53-1, p. 1.)  Pursuant to the approved stipulation, Plaintiffs' counsel issued the Court-authorized notice.  Upon information and belief, Plaintiffs' counsel sent the notice to approximately ninety (90) individuals.  (Steffek Decl., ¶ 12.)  Since Plaintiffs' counsel first sent out the notice, two additional individuals filed notices of consent to join the lawsuit (five others had already filed such notices prior to certification of the conditional class).  (Dkt. #47, 48, 49, 50, 51, 60, 61.)  Including Jones and Morrisey, there are presently 9 plaintiffs in the conditional class.

## RELEVANT FACTS

To place this motion, and this lawsuit, into proper context, a brief description of the defendants, the pertinent exotic dance club operations, and the plaintiffs is necessary.

### A.    Defendants.

Plaintiffs have named the following nine entities and individuals as defendants in this lawsuit:

- **P.T.B., Inc.** – P.T.B., Inc. ("PTB") owns and operates an exotic dance nightclub called Cruisin' Chubbys Gentlemen's Club ("Cruisin' Chubbys") in Wisconsin Dells, Wisconsin.  (Lantz Roberts Decl., ¶ 2.)  It does not own any other assets.  (Lantz Roberts

Decl., ¶ 3.)  PTB is owned by Kenneth C. Roberts and the estate of Peter Beyer.  (Ken Roberts Decl., ¶ 3.)  It has its own liquor license and employees.  (Lantz Roberts Decl., ¶ 3.)

- **Edge of the Dells, Inc. –** Edge of the Dells, Inc. ("Edge of the Dells") owns and operates a bar and restaurant in Wisconsin Dells, Wisconsin.  (Lantz Roberts Decl., ¶ 4.)  It is owned by Kenneth C. Roberts and Lantz Ray Roberts.  (Lantz Roberts Decl., ¶ 4.)  It has its own liquor licenses and employees.  (Lantz Roberts Decl., ¶ 4.)  No exotic dancing or other nude or semi-nude events occur at Edge of the Dells' bar or restaurant.  (Lantz Roberts Decl., ¶ 4.)

- **Living on the Edge Campground & Go-Karts, Inc**. – Living on the Edge Campground & Go-Karts, Inc. ("Living on the Edge"), owns and operates a campground and rental cabins in Wisconsin Dells, Wisconsin.  (Lantz Roberts Decl., ¶ 5.)  It has four employees. (Lantz Roberts Decl., ¶ 5.)  While all guests at the campground or in the rental cabins are required to be at least 21 years old, nudity or semi-nudity is not allowed in any public spaces within the campground or around the rental cabins.  (Lantz Roberts Decl., ¶ 5.) While there had been various adult-themed events hosted at the Campground, including wet t-shirt contests and pudding wrestling matches, no such events have occurred at any time since January 1, 2014.  (Lantz Roberts Decl., ¶ 5.)

- **Kenny's Future, LLC** – Kenny's Future, LLC ("Kenny's Future"), is a real estate holding company that owns the real property on which sit the Edge of the Dells bar and restaurant and the Living on the Edge campground and rental cabins.  (Lantz Roberts Decl., ¶ 6.)  It has no employees.  (Lantz Roberts Decl., ¶ 6.)

- **Timothy Enterprises, LLC** – Timothy Enterprises, LLC ("Timothy Enterprises"), is a real estate holding company that owns the real property on which sits Cruisin' Chubbys. (Lantz Roberts Decl., ¶ 7.)  It has no employees.  (Lantz Roberts Decl., ¶ 7.)

- **Southern Heights, LLC** – Southern Heights, LLC ("Southern Heights"), is a real estate holding company that owns the real property in Wisconsin Dells, Wisconsin, on which sits a small lodging facility and storage facilities.  (Lantz Roberts Decl., ¶ 8.)

In addition, Plaintiffs named Cruisin' Chubbys as a defendant, but there is no formal entity of this identity; rather, as explained above, Cruisin' Chubbys is the trade name of the nightclub owned and operated by PTB.  (Lantz Roberts Decl., ¶ 9.)

**B.    Cruisin' Chubbys.**

As stated above, Cruisin' Chubbys is an exotic dance club in Wisconsin Dells, Wisconsin.  (Lantz Roberts Decl., ¶ 10.)  There, women perform exotic dances, both on stages available for viewing by all Cruisin' Chubbys patrons and in private rooms for patrons willing to pay private dance fees.  (Lantz Roberts Decl., ¶10.)  The women are not employees of PTB, but, rather, are independent contractors who choose when and how often they wish to perform exotic dances.   (Lantz Roberts Decl., ¶10.)   Other than some common-sense guidelines, including prohibitions on drug use on the premises, physical contact with patrons and prostitution, as well as a requirement that exotic dancers wear shoes at all times, exotic dancers are free to decide how to perform dances and how many, and what type, of dances she wishes to perform.  (Lantz Roberts Decl., ¶ 10.)

For lack of a better term, the base of independent contractors who perform as exotic dancers is quite transient.  (Lantz Roberts Decl., ¶ 11.)  Many independent contractors perform at more than one club, and many perform at different clubs during the same week.  (Lantz Roberts

5

Decl., ¶ 11.)   Further, some independent contractors travel throughout the nation to perform dances at clubs in regions with more activity, depending on the season – for example, Cruisin' Chubbys entertains far more patrons, and thus receives far more requests from independent contractors to perform, during the summer months.  (Lantz Roberts Decl., ¶ 11.)

The amount of days on which an independent contractor performs varies widely from individual to individual.  (Lantz Roberts Decl., ¶ 12.)   Some individuals become "regulars," performing on a fairly frequent basis.  (Lantz Roberts Decl., ¶ 12.)   Other individuals only perform once or twice and never request bookings again, and some individuals request bookings but never show.  (Lantz Roberts Decl., ¶ 12.)

Many individuals who request bookings at Cruisin' Chubbys wish to do so anonymously, instead providing either only stage names or aliases.  (Lantz Roberts Decl., ¶ 13.)   Accordingly, in many instances PTB does not receive personal information regarding an independent contractor, including her name, address, etc.  (Lantz Roberts Decl., ¶ 13.)   Many dancers prefer this type of arrangement, both from a privacy perspective as well as an income perspective. (Lantz Roberts Decl., ¶ 13.)

Dancers who perform at Cruisin' Chubbys retain all tips that they receive from patrons in exchange for the exotic dances they perform.  (Lantz Roberts Decl., ¶ 14.)   In addition, dancers retain one-half of all fees associated with private exotic dances performed for patrons.  (Lantz Roberts Decl., ¶ 14.)   For example, the cost for a nude lap dance at Cruisin' Chubbys is $40. (Lantz Roberts Decl., ¶ 14.)   Upon completing a nude lap dance, the independent contractor retains $20, and Cruisin' Chubbys retains the other half.  (Lantz Roberts Decl., ¶ 14.)   All such transactions, and all tips, are handled strictly in cash.  (Lantz Roberts Decl., ¶ 14.)

There is nothing "uniform" about the frequency or duration of when independent contractors perform exotic dances at Cruisin' Chubbys.  (Lantz Roberts Decl., ¶ 15.)  One individual may perform dances on four nights in a given week.  (Lantz Roberts Decl., ¶ 15.)  Another individual may only perform at Cruisin' Chubbys one weekend a year.  (Lantz Roberts Decl., ¶ 15.)  This type of difference is perfectly demonstrated by the individuals who have opted in to this lawsuit to date.

### C.  Plaintiffs.

Each individual who has opted in to this lawsuit, to date, may have performed exotic dances at Cruisin' Chubbys at some time in the past.  (Lantz Roberts Decl., ¶ 16.)  Each's performance history is summarized as follows:

1.  <u>Teriana Jones</u>.  Jones began performing exotic dances as an independent contractor at Cruisin' Chubbys in mid-2014.  (Lantz Roberts Decl., ¶ 16(a).)  She last performed any such dances on approximately April 25, 2016.  (Lantz Roberts Decl., ¶ 16(a).)  On that date, Jones was captured smoking marijuana within the Cruisin' Chubby's premises by PTB's video surveillance system.  (Lantz Roberts Decl., ¶ 16(a).)

In explaining why she believes she is an appropriate representative of the conditional class in this matter, Jones asserts that she "performed the same job duties as all dancers and was subject to the same unlawful pay structure as all dancers" in the conditional class.  (Steffek Decl., Ex. A, p. 5.)  Yet, in contrast to declarations of other plaintiffs and in direct contradiction to the language of her own First Amended Complaint, Jones never performed any nude events at Living on the Edge's campground, never provided any services, of any time or nature, at said campground, and never required to stay at the lodging facilities owned by Southern Heights. (Steffek Decl., Ex. B, pp. 2-3.)

PTB asked Jones to state when she provided services at Cruisin' Chubbys, what services she provided on those dates, and how much money she received in exchange for such services. (Steffek Decl., Ex. A, pp. 2-3.)  Jones provided no substantive response, instead stating that without first receiving that very information from the defendants, "it is difficult, if not impossible, at this time to identify all of the dates [she] worked or the amount of money [she] earned." (Steffek Decl., Ex. A, p. 3.)

2.   <u>Bethany Morrisey</u>.   Morrisey began performing exotic dances as an independent contractor at Cruisin' Chubby's in 2011.  Between 2014 and 2016, she performed on approximately three occasions.  (Lantz Roberts Decl., ¶ 16(b).)

Morrisey claims that she has performed in nude events at Living on the Edge's campground, particularly an event called "Thursday Night Thunder."  (Steffek Decl., Ex. C, p. 2.) Even if true, any such participation would have occurred prior to January 1, 2014, as no such events have taken place at Living on the Edge's campground since prior to that date.  (Lantz Roberts Decl., ¶ 16(b).)  Morrisey also admits that she was never required to stay at the lodging facilities owned by Southern Heights.  (Steffek Decl., Ex. C, p. 2.)

PTB asked Morrisey to state when she provided services at Cruisin' Chubbys, what services she provided on those dates, and how much money she received in exchange for such services.  (Steffek Decl., Ex. D, p. 1.)  Morrisey provided the exact same non-response as Jones, stating that without first receiving that very information from the defendants, "it is difficult, if not impossible, at this time to identify all of the dates [she] worked or the amount of money [she] earned." (Steffek Decl., Ex. D, p. 2.)

3.   <u>Jane Roe #1</u>.  Jane Roe #1 performed exotic dances as an independent contractor at Cruisin' Chubbys during only one weekend.  (Lantz Roberts Decl., ¶ 16(c).)  She never

participated in any nude events or provided any services at the Campground, and she was never required to sleep at Southern Heights' lodging facilities.  (Steffek Decl., Ex. E, p. 2.)

4.      Jane Roe #2.  PTB has no recollection of Jane Roe #2 at this time.  She, too, never participated in any nude events or provided any services at the Campground, and she was never required to sleep at Southern Heights' lodging facilities.  (Steffek Decl., Ex. F, p. 2.)

5.      Jane Roe #3.  PTB has no recollection of Jane Roe #3 at this time.  (Lantz Roberts Decl., ¶ 16(e).)  Like Jane Roes #1 and 2, she never participated in any nude events or provided any services at the Campground, and she was never required to sleep at Southern Heights' lodging facilities.  (Steffek Decl., Ex. G, p. 2.)

6.      Jane Roe #4:  PTB has no recollection of Jane Roe #4 at this time.  (Lantz Roberts Decl., ¶ 16(f).)  Her allegations differ from all other plaintiffs, in that she claims she participated in nude events at Living on the Edge's campground and was required to sleep at Southern Heights' lodging facilities.  (Steffek Decl., Ex. H, p. 2.)

7.      Jane Roe #5:  Jane Roe #5 performed exotic dances as an independent contractor at Cruisin' Chubbys from 2016 to 2017.  (Lantz Roberts Decl., ¶ 16(g).)  PTB refused to continue allowing Jane Roe #5 to perform at Cruisin' Chubbys after it discovered her consuming alcohol on the premises, as she was under the age of 21 at the time.  (Lantz Roberts Decl., ¶16(g).)  She recently requested permission to perform again and indicated to PTB that she was withdrawing her consent to participate in this matter.  (Lantz Roberts Decl., ¶ 16(g).)  Plaintiffs' counsel subsequently confirmed Jane Roe #5's intent in this regard.  (Steffek Decl., Ex. I.)

Jane Roe #5, like several of the other anonymous plaintiffs, confirms that she never provided any nude or other services at Living on the Edge's campground or was required to sleep at Southern Heights' lodging facilities.  (Steffek Decl., Ex. J., p. 2.)  Interestingly, she also

admits that she never provided more than forty (40) hours of service as an exotic dancer at Cruisin' Chubbys in any given week since January 1, 2014.  (Steffek Decl., Ex. J., p. 2.)

8.      <u>Jane Roe #6</u>.  Jane Roe #6 first requested to book performances as an independent contractor at Cruisin' Chubbys in June 2017.  It is not clear whether she ever performed at Cruisin' Chubbys.  She may have performed on one occasion. (Lantz Roberts Decl., ¶ 16(h).)

9.      <u>Jane Roe #7</u>.  Jane Roe #7 performed as an independent contractor at Cruisin' Chubbys in 2017 on either 14 or 15 occasions.  Cruisin' Chubbys refused to book her for performances after it discovered that she had stolen money from another independent contractor. (Lantz Roberts Decl., ¶ 16(i).)

<u>**ARGUMENT**</u>

**I.      THE COURT SHOULD DECERTIFY THE CONDITIONAL CLASS.**

**A.      Standards Applicable to FLSA Collective Action Certification.**

Certification of an FLSA collective action involves a two-step process.  <u>Kelly v. Bluegreen Corp.</u>, 256 F.R.D. 626, 628-29 (W.D. Wis. 2009).  "At the first step, plaintiffs must make only 'a modest factual showing' that they are similarly situated to potential class members."  <u>Id.</u> at 629, <u>quoting</u> <u>Austin v. CUNA Mut. Ins. Soc.</u>, 232 F.R.D. 601, 605 (W.D. Wis. 2006).  "If this showing is made, the court conditionally certifies a class and authorizes notice to potential class members and the parties conduct discovery."  <u>Id.</u>  It is undisputed that the Court conditionally certified a class in this matter.  (Dkt. 58.)

The second step of the certification process occurs after discovery has been performed and upon a motion for decertification by a defendant.  <u>Id.</u>  "[A]t this point the court determines whether the plaintiffs are *in fact* similarly situated to those who have opted in."  <u>Id.</u> (emphasis added).  This step requires a "more stringent inquiry" to determine whether proceeding to trial on

a collective basis is appropriate.  Allen v. City of Chicago, No. 10 C 3183, 2014 WL 5461856 at *2 (N.D. Ill. Oct. 22, 2014).

At this second stage, an FLSA plaintiff "bears the burden of producing a record demonstrating the continued propriety of maintaining the class action[.]"  Ellis v. Elgin Riverboat Resort, 217 F.R.D. 415, 419 (N.D. Ill. 2003).  To sustain this burden, the plaintiff must satisfy two standards: (1) that he or she is "similarly situated" to the other opt-in plaintiffs; and (2) that he or she can meet all of the requirements for class action certification under Federal Rule of Civil Procedure 23.  Espenscheid v. DirectSat USA, LLC, 705 F.3d 770, 771-72 (7th Cir. 2013); De Leon v. Grade A Const., Inc., No. 16-cv-348-jdp, 2017 WL 6375821 at *1 (W.D. Wis. Dec. 13, 2017).  Sustaining this burden requires "substantial evidence."  Beauperthuy v. 24 Hour Fitness USA, Inc., 772 F.Supp.2d 1111, 1118 (N.D. Cal 2011).  These standards are outlined generally below, and specific aspects of each are explained in greater detail in conjunction with applying same to the facts of this case.

### 1.    "Similarly Situated" under the FLSA.

When analyzing whether plaintiffs are similarly situated for FLSA purposes, courts consider: "(1) whether the factual and employment settings of the individual plaintiffs are similar or disparate; (2) whether defendants may assert various defenses that appear to be individual to each plaintiff; and (3) whether fairness and procedural considerations support proceeding as a collective action."  Espenscheid v. DirectSat USA, LLC, No. 09-cv-625-bbc, 2011 WL 2009967 at *4 (W.D. Wis. May 23, 2011), aff'd 705 F.3d 770 (7th Cir. 2013).  Under this analysis, "the more dissimilar plaintiffs' job experiences are from one another and the more individualized an employer's defenses are, the less appropriate the matter is for collective treatment."  Teed v.

Thomas & Betts Power Solutions, LLC, No. 08-cv-303-bbc, 2012 WL 12888026 at *4 (W.D. Wis. Jan. 11, 2012).

Importantly, under this analysis, the key inquiry in determining whether the plaintiffs are similarly situated for purposes of an FLSA collective action is the ultimate core issue to be tried in the underlying case. Id. at *5. Where the core issue is the lawfulness of a policy or practice, class certification likely is appropriate. Id. However, where the core issue is not the policy or practice but, rather, whether the plaintiffs worked for the defendant(s) and, if so, how much they worked and what they are owed for such work, the propriety of class certification is highly suspect. Id.

### 2.    Class Certification under Federal Rule of Civil Procedure 23.

To be certified, the plaintiffs must also demonstrate satisfaction with all of the requirements of Federal Rule of Civil Procedure 23. These requirements are set forth in two subsections. First, under subsection (a), the plaintiffs must prove: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defense of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(1)-(4). Each of these requirements must be met. In re Copper Antitrust Litigation, 196 F.R.D. 348, 353 (W.D. Wis. 2000).

If the plaintiffs satisfy each of the requirements of subsection (a), they "must [also] satisfy at least one of the three subdivisions of Rule 23(b)." Id. These subdivisions are:

(1) prosecuting separate actions by or against individual class members would create a risk of:

(A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or

(B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;

(2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or

(3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

**3.      Representative Cases**.

The Seventh Circuit and the district courts of Wisconsin has provided guidance on the propriety of class certification in FLSA wage and hour actions on several recent occasions. These decisions are summarized as follows, and their applicability to the current matter is discussed below.

a.      <u>Espenscheid v. DirectSatUSA, LLC</u>, 705 F.3d 770 (7th Cir. 2013).   In <u>Espenscheid</u>, the purported class consisted of 2,341 technicians employed by the defendant to install and repair home satellite dishes.  <u>Id.</u> at 772.  The Seventh Circuit affirmed the Western District of Wisconsin's decertification of a conditionally certified FLSA collective class on the basis that the primary relief sought by the defendants was money damages.  <u>Id.</u> at 773.  In doing so, it stated:

> There would have been no problem had the plaintiffs been seeking just injunctive or declaratory relief, because then the only issue would have been whether DirectSat had acted unlawfully.  But the plaintiffs didn't seek either form of relief … only damages.  And to determine damages would, it turns out, require 2341 separate evidentiary hearings, which might swamp the Western District of Wisconsin with its two district judges.  For it's not as if each technician worked from 8 a.m. to 5 p.m. and was forbidden to take a lunch break and so worked a 45-hour week (unless he missed one or more days because of illness or some other reason) but was paid no overtime.  Then each technician's damages could be

> computed effortlessly, mechanically, from the number of days he worked each week and his hourly wage.  And when 'it appears that the calculation of monetary relief will be mechanical, formulaic, a task not for a trier of fact but for a computer program, so that there is no need for notice …, the district court can award that relief without terminating the class action and leaving the class members to their own devices"  Nothing like that is possible here.

Id. (citations omitted).  The Seventh Circuit rejected the plaintiffs' counsel's assertion that 42 members of the purported class could testify as to the damages sustained by each class member, strongly declaring:

> They continue on appeal to labor under the misapprehension that testimony by 42 unrepresentative "representative" witnesses, supplemented by other kinds of evidence that they have been unable to specify, would enable a rational determination of each class member's damages.  They must think that like most class action suits this one would not be tried – that if we ordered a class or classes certified, DirectSat would settle.  That may be a realistic conjecture, but class counsel cannot be permitted to force settlement by refusing to agree to a reasonable method of trial should settlement negotiations fail.  Essentially they asked the district judge to embark on a shapeless, freewheeling trial that would combine liability and damages and would be virtually evidence-free so far as damages were concerned.

Id. at 776.  Finally, the Seventh Circuit confirmed that "average" damages in wage and hour lawsuits are improper, and not sufficient support for maintaining class certification, as doing so would confer a windfall on some plaintiffs while undercompensating others.  Id. at 774.

      b.   De Leon v. Grade A Construction, Inc., No. 16-cv-348-jdp, 2017 WL 6375821 (W.D. Wis. Dec. 13, 2017).  The Western District refused to certify a class in that FLSA and Wisconsin wage claim lawsuit because the plaintiffs "failed to show that their proposed class is so numerous that joinder of all members is impracticable."  Id. at *1.  Specifically, that case involved an estimated state law class of 20 to 25 members and an FLSA collective class of four.  Id. at *2.  As such, the "interest in joining the class appear[ed] to be weak[.]"  Id.  The plaintiffs attempted to counter this truth by arguing that the low level of interest may be due to "the employees' concern about potential retaliation."  Id.  The court

rejected this position, stating that certifying a class would not alleviate that concern and that, perhaps more importantly, a class certification request must be supported by more than mere speculation.  Id.

       c.    <u>Boelk v. AT&T Teleholdings, Inc.</u>, No. 12-cv-40-bbc, 2013 WL 261265 (W.D. Wis. Jan. 10, 2013).  The plaintiffs in that case claimed the defendants violated the FLSA and the Wisconsin wage law by failing to pay wages for meal breaks.  <u>Id.</u> at *1.  The Western District determined that the case could not proceed as a class or collective action, as "even if plaintiffs had identified a common issue, individual issues would predominate in this case, making the case unmanageable."  <u>Id.</u>  In doing so, the court confirmed the United States Supreme Court's mandate that the commonality requirement under Rule 23 cannot be satisfied "simply by crafting a common question" such as an allegation that the defendant(s) violated the same law with respect to each plaintiff.  <u>Id.</u> at *7.  In addition, the court made very clear that class certification should not be granted in cases focused on obtaining money damages:

> Rule 23(b)(2) permits classes for actions in which "final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." "[C]ertification under Rule 23(b)(2) 'does not extend to cases in which the appropriate final relief relates exclusively or predominantly to money damages.'" Additionally, courts should not certify classes under Rule 23(b)(2) solely to lay the groundwork for subsequent individualized monetary damages award.

<u>Id.</u> at *11.

       d.    <u>Lopez v. Sears, Roebuck & Co.</u>, No. 11-cv-728-bbc, 2012 WL 13042619 (W.D. Wis. Oct. 11, 2012).  In reversing an earlier decision to certify a class of employees demanding unpaid commissions, the Western District stated that "the first step in determining whether certification is appropriate under Rule 23(b)(2) is to determine the nature of the plaintiffs' claims."  <u>Id.</u> at *1, <u>citing</u> <u>Kartman v. State Farm Mut. Auto. Ins. Co.</u>, 634 F.3d 883, 888 (7th Cir. 2011).  That is because "Rule 23(b)(2) is intended for cases in which injunctive or

declaratory relief will provide 'final' relief to the plaintiffs" and does not extend to " 'cases in which the appropriate final relief relates exclusively or predominantly to money damages.'" Id. (citations omitted).

       e.    <u>Bauer v. Kraft Foods Global, Inc.</u>, 277 F.R.D. 558 (W.D. Wis. 2012). This decision further emphasizes that "Rule 23(b)(2) 'does not authorize class certification when each class member would be entitled to an individualized award of money damages[.]'" Id. at 563.  Rather, such claims fall under Rule 23(b)(3), which requires an analysis of all parties' due process concerns. Id. at 563, 64.

       f.    <u>Teed v. Thomas & Betts Power Solutions, LLC</u>, No. 08-cv-303-bbc, 2012 WL 12888026 (W.D. Wis. Jan. 11, 2012).  The Western District refused to certify a collective class in this FLSA wage and hour action, as "[t]he primary issues that must be decided by a jury [in that case] are whether plaintiffs in fact worked overtime hours and if so, how many hours they worked." Id. at *5.  Accordingly, the plaintiffs were not similarly situated, and class certification was not saved by the defendant's alleged "inadequate timekeeping practices and records[.]" Id.  The court further confirmed that "it [was]not enough for plaintiffs to raise a common question as to whether they and other filed engineers are owed overtime compensation." Id. at *6.  Rather, the evidence showed that while the opt-in plaintiffs may have performed similar job duties, the plaintiffs had "different work experiences and different claims for overtime compensation," so the case could not proceed to a jury trial on a collective basis. Id.

       g.    <u>Dorman v. DHL Express (USA), Inc.</u>, No. 09-cv-99-bbc, 2010 WL 446071 (W.D. Wis. Feb. 3, 2010).  The Western District analyzed the plaintiffs' request for class certification under Rule 23(b)(3), analyzing whether the plaintiff satisfied this subsection's

"predominance" and "superiority" requirements.  Id. at 2, 3.  The court found that while the plaintiff was challenging a blanket practice of the employer relating to overtime wages, the "predominance" requirement was not satisfied because, regardless of the blanket practice, the predominant analysis was whether the FLSA motor carrier exemption applied to each member of the requested class.  Id. at 3-5.  Further, the plaintiff failed to satisfy the superiority requirement because any member of the requested class could personally join the lawsuit as a plaintiff and because no economy of time or effort would be served, as each member's claim would rise and fall on his or her specific work circumstances.  Id. at 6.

   h. <u>Pecor v. North Point EDC, Inc.</u>, No. 16-C-1263, 2017 BL 196492 (E.D. Wis. June 8, 2017).  In that case, the Eastern District of Wisconsin refused to even conditionally certify a class of exotic dancers who had performed at the defendant's nightclub.  Id. at *1.  In doing so, the court noted that "[i]n determining whether individuals are similarly situated, the court 'need not accept the plaintiff's allegations as true.'"  Id. at *4 (citations omitted).  Rather, the court is to examine all the evidence before it to determine whether the burden is satisfied.  In finding that the plaintiff in that case had failed to carry her burden, the court stated:

> Based on the record before me, I conclude that Pecor has failed to make an adequate showing that she is similarly situated with proposed class members so as to warrant conditional class certification.  Although Pecor presents a set of circumstances that affected all dancers at North Point, she entirely ignores evidence offered by the defense that significant various also exist.  Most importantly, Pecor offers no evidence as to how many hours a week most dancers work at the Club, the amount they generally receive in tips and bonus payment, or how many reach the threshold number for requiring overtime pay.  She fails to provide such information even for herself and offers none as to the other dancers.  And the two anonymous opt-ins have provided no information at all.

Id. at *5.  Finally, the court stated that "[a] plaintiff may not demonstrate she is similarly situated for the purposes of conditional class certification by relying on 'unsupported assertions of additional plaintiffs and widespread FLSA violations."  Id.

**B.      The Plaintiffs Cannot Satisfy These Standards.**

The facts of this case demonstrate that Plaintiffs cannot satisfy either the "similarly situated" or the Rule 23 requirements for class certification.  First, the plaintiffs are not similarly situated because each plaintiff's factual and employment settings are disparate, and fairness and procedural considerations do not support proceeding as a collective action.  Second, joinder of all members is not impracticable, and the predominant question in this case – what, if any, plaintiffs are owed, and how much – is not common between class members.  Further, this matter is not one of any of the types appropriate for class resolution.

**1.      The plaintiffs are not similarly situated.**

The factual settings of each potential class member's relationship with the defendants vary significant from individual to individual.  Plaintiffs' own discovery responses prove as much.  For example, and as laid out above:

- Jones claims she worked more than 40 hours in various weeks; Jane Roe #5 does not.

- Morrisey claims she worked at Living on the Edge's campground; Jones does not.

- Jane Roe #4 claims she was forced to sleep at Southern Height's lodging facilities; no other plaintiff makes such a claim.

These discrepancies are significant, as which, if any, defendant can be liable will vary from plaintiff to plaintiff.  Thereafter, whether any such defendant is, in fact, liable and, if so, to what extent will have to be determined separately, which cannot be done by simple representative testimony or modeling.  Rather, the devil will be in all of the unique and specific details; there is no way around it.

In addition, Plaintiffs have offered no evidence as to when they worked or what they believe they are owed, which is evidence required to demonstrate they are similarly situated with

one another.  See Pecor, supra, at *5.  Any claim by Plaintiffs that this is the fault of the defendants is no excuse.  See Teed, supra, at *5.

The cases cited above make clear that plaintiffs with such varying facts are not similarly situated such that proceeding as a collective action is proper.  Boelk and Pecor provide excellent guidance and confirm that where individual questions about liability and damages predominate, collective class certification is not appropriate.  Boelk, supra, at *1; Pecor, supra, at *5.

### 2.        Joinder is not impracticable.

Since Plaintiffs' counsel mailed the opt-in notice, only two individuals have opted in to this lawsuit, bringing the total number of opt-in plaintiffs to nine.  One, however, has indicated her desire to withdraw her opt-in notice, bringing the true total to eight.  Obviously, participating in this lawsuit is not of great interest to the prospective class, an appropriate consideration in determining Rule 23 impracticability.  De Leon, supra, at *1.  Joinder of those who wish to participate in this action, therefore, is not impracticable; surely the parties and the Court can easily handle a wage-claim matter filed by eight individuals.

Importantly, any argument by Plaintiffs that joining additional individuals is impracticable due to safety and/or privacy concerns possibly held by such individuals should be rejected.  First, Judge Peterson already found such an argument baseless in De Leon.  Second, the Court has already granted a motion to proceed anonymously, and there is no reason to believe that such an order would not apply equally to any direct-action plaintiffs who wish to formally join this lawsuit.

### 3.        This is not a Rule 23(b) case.

As joinder is not impracticable, Plaintiffs cannot satisfy all of the requirements under Rule 23(a), deeming a Rule 23(b) analysis unnecessary.  However, for purposes of completeness,

it is clear Plaintiffs cannot satisfy any of the subdivisions of Rule 23(b).  First, there is no risk of inconsistent or varying adjudications, the concern of subsection (b)(1), as specific liability and damages will have to be established by each individual plaintiff.  Second, and as is discussed in greater detail below, this is a damages case, not an injunctive matter, rendering Rule 23(b)(2) inapplicable.

Third, the "predominance" and "superiority" requirements of Rule 23(b)(3), as explained by Judge Crabb in <u>Dorman</u>, <u>supra</u>, cannot be satisfied.  There is no true "predominant" issue in this case, such as whether the time spent donning and doffing protective equipment by a defined group of employees was compensable.  Rather, this case is full of "who, what, when, where, why, and how much" – who, if anyone, was an employer to whom, when was it, why was it, and how much, if anything, is owed as a result.  The answers to these questions will differ from plaintiff to plaintiff.  In addition, as whether this matter proceeds with individual plaintiffs or with a class will not change how the proceedings will have to be structured, as each plaintiff's claim will depend on her specific circumstances.  There is, consequently, no superiority in proceeding as a collective action.

### 4. This damages-focused case is not appropriate for collective action.

The Seventh Circuit's decision in <u>Espenscheid</u> directly applies to this case.  Much like in that case, this matter is all about money damages.  Determining what, if any, damages are proper will require a separate evidentiary hearing for each individual class member.  There is no possible mechanical or formulaic way to calculate damages, and representative testimony will not do the trick.  Rather, this matter will turn on specific, direct, and admissible evidence.

## <u>CONCLUSION</u>

For the reasons set forth herein, the defendants respectfully request that the Court grant their Motion for Decertification.

Dated:  January 5, 2018.

/s/ Anthony J. Steffek
Laurie E Meyer
State Bar No. 1025405
Anthony J. Steffek
State Bar No. 1053615
Attorneys for Defendants,
Edge of the Dells, Inc., P.T.B., Inc., d/b/a
Cruisin' Chubby's Gentlemen's Club, Kenny's
Future, LLC, Living on the Edge Campground
& Go-Karts, Inc., Timothy Enterprises, LLC,
Southern Heights, LLC, Timothy D. Roberts,
Kenneth C. Roberts and Lantz Ray Roberts
318 S. Washington Street, Suite 300
Green Bay, WI 54301
920.435.9378

OF COUNSEL:
Davis & Kuelthau, s.c.

Direct contact information:

Laurie E Meyer              414.225.1419 direct dial
                           414.278.3619 direct fax
                           Laurie.Meyer@dkattorneys.com

Anthony J. Steffek          920.431.2237 direct dial
                           920.431.2277 direct fax
                           asteffek@dkattorneys.com