IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

TERIANA JONES and BETHANY MORRISEY, on
behalf of themselves and a class of employees and/or
former employees similarly situated,

                Plaintiffs,

   v.

CRUISIN' CHUBBYS GENTLEMEN'S CLUB,
EDGE OF THE DELLS, INC.,
TIMOTHY ENTERPRISES, LLC,
KENNY'S FUTURE, LLC,
LIVING ON THE EDGE CAMPGROUND & GO-
KARTS, INC.,
PTB, INC., SOUTHERN HEIGHTS, LLC,
TIMOTHY D. ROBERTS, KENNETH C. ROBERTS,
and LANTZ RAY ROBERTS f/k/a THOMAS LANTZ
DOUGLAS,

                Defendants.[1]

OPINION & ORDER

17-cv-125-jdp

---

Plaintiffs Teriana Jones and Bethany Morrisey were both exotic dancers at defendant Cruisin' Chubbys Gentlemen's Club. They contend that defendants were their joint employer under both state and federal labor laws, but that defendants classified them incorrectly as independent contractors, and, as a result, violated legal requirements to pay plaintiffs a minimum wage and the higher rate for working overtime. Plaintiffs also contend that defendants violated state and federal law by retaining a portion of the tips the dancers received.

---

[1] The court has amended the caption to reflect the correct spelling of the club as identified in defendants' answer and subsequent filings. There is also some inconsistency in the record regarding the spelling of Bethany's last name. Plaintiffs use the name "Bethany Morrisey" in their amended complaint, Dkt. 29, but change this plaintiff's last name to "Morrissey" (adding an "s") in later filings. *E.g.*, Dkt. 36. The court has used the spelling in the amended complaint because that is the operative pleading, but if that spelling is incorrect, plaintiffs should move to amend the caption.

Plaintiffs seek to represent a collective action under the Fair Labor Standards Act and a class action under state law. The court previously approved the parties' stipulation for conditional certification of plaintiffs' FLSA claims. Dkt. 58.

Two related motions are before the court: (1) plaintiffs' motion to certify a class under Rule 23 as to their state law claims, Dkt. 72; and (2) defendants' motion to decertify the collective action under 29 U.S.C. § 216(b) as to plaintiffs' FLSA claims, Dkt. 85. Plaintiffs also move to dismiss the claim of "Jane Roe #5," another dancer who earlier had filed a notice of consent to join the lawsuit. Dkt. 83. That motion is unopposed and will be granted.

As for the parties' dueling certification motions, the court will grant plaintiffs' motion and deny defendants'. The case for certification of plaintiffs' claims is relatively straightforward, as shown by the myriad decisions around the country certifying classes of dancers challenging their classification as independent contractors rather than employees. Although defendants deny that they are classifying their dancers incorrectly, none of the evidence cited by either side suggests that defendants classify each dancer differently, only that there is a factual dispute about how *all* the dancers are classified. Because that dispute can be resolved as to the entire class, it makes sense to decide in one lawsuit the dancers' employment status. There will be individualized questions regarding damages, but that is not a ground for denying the motion for class certification in light of the evidence that liability can be decided jointly.

ANALYSIS

A. Legal standard

Plaintiffs seek to certify their state law claims under Federal Rule of Civil Procedure 23, which imposes various requirements that all class actions must satisfy: (1) the scope of the class as to both its members and the asserted claims must be "defined clearly" using "objective criteria," *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 657 (7th Cir. 2015); (2) the class must be sufficiently numerous, include common questions of law or fact, and be adequately represented by plaintiffs (and counsel) who have claims typical of the class, Fed. R. Civ. P. 23(a); and (3) the class must meet the requirements of at least one of the types of class actions listed in Rule 23(b).

In this case, plaintiffs focus on Rule 23(b)(3), which applies if "the questions of law or fact common to class members predominate over any questions affecting only individual members" and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.[2] The ultimate question in a Rule 23(b)(3) class is whether "judicial economy from consolidation of separate claims outweighs any concern with possible inaccuracies from their being lumped together in a single proceeding for decision by a single

---

[2] Plaintiffs also cite Rule 23(b)(1) and Rule 23(b)(2). But Rule 23(b)(2) generally relates to classes for injunctive relief, which plaintiffs are not seeking in this case. Although there are limited circumstances in which a court can certify a class for damages under Rule 23(b)(2), *Johnson v. Meriter Health Servs. Emp. Ret. Plan*, 702 F.3d 364 (7th Cir. 2012), plaintiffs do not contend that they meet the requirements for such a class. Rule 23(b)(1) relates to concerns about inconsistent rulings and impairing the ability of those outside the class from protecting their rights. Because "the Supreme Court [has] cautioned strongly against overuse of (b)(1) classes," *Spano v. The Boeing Co.*, 633 F.3d 574, 587 (7th Cir. 2011) (citing *Ortiz v. Fibreboard, Corp.*, 527 U.S. 815 (1999)), and plaintiffs cite no authority for relying on Rule 23(b)(1) under the circumstances of this case, the court will limit its consideration to Rule 23(b)(3).

judge or jury." *Mejdrech v. Met-Coil Sys. Corp.*, 319 F.3d 910, 911 (7th Cir. 2003). *See also Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 761 (7th Cir. 2014) ("Ultimately, the court must decide whether classwide resolution would substantially advance the case.").

Plaintiffs' claims under the Fair Labor Standards Act are governed by their own provision. Under 29 U.S.C. § 216(b), plaintiffs may bring a collective action "for and [o]n behalf of . . . themselves and other employees similarly situated." Although the language in Rule 23 and § 216(b) is not the same, the court of appeals has stated that "there isn't a good reason to have different standards for the certification of the two different types of action," so it has incorporated the requirements for Rule 23 into § 216(b). *Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 772 (7th Cir. 2013).[3]

The court will discuss the Rule 23 requirements in three groups. Because most of defendants' objections relate to commonality, typicality, and predominance, the court will discuss them first. Next, the court will consider the scope of the proposed class. Finally, the court will address the requirements of numerosity and adequacy.

**B. Commonality, typicality, and predominance**

There is significant overlap in the requirements for commonality and typicality under Rule 23(a), and the requirements in Rule 23(b)(3) to show that common questions predominate and that a class action is superior to individual lawsuits. *Gen. Tel. Co. of the Sw. v.*

---

[3] The court has already conditionally certified plaintiffs' FLSA claims, Dkt. 58, but the standard for conditional certification is more lenient than the standard for certification at this stage of the case. *Werner v. Waterstone Mortg. Corp.*, No. 17-cv-608, 2018 WL 813525, at *1 (W.D. Wis. Feb. 9, 2018) ("In determining whether a class should be certified conditionally under 29 U.S.C. § 216(b), the question is whether the plaintiffs have made a 'modest factual showing' that they and potential class members were victims of a common policy or plan that violated the law.").

*Falcon*, 457 U.S. 147, 157 n.13 (1982) ("The commonality and typicality requirements of Rule 23(a) tend to merge."); *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 814 (7th Cir. 2012) (Rule 23(b)(3) predominance requirement is "similar to Rule 23(a)'s requirements for typicality and commonality"). All of those requirements focus on the question whether the court or the factfinder can resolve issues across the class rather than through individualized determinations. *Costello v. BeavEx, Inc.*, 810 F.3d 1045, 1059 (7th Cir. 2016) ("Predominance is satisfied when common questions represent a significant aspect of a case and can be resolved for all members of a class in a single adjudication.") (internal quotations and alterations omitted); *Chi. Teachers Union, Local No. 1 v. Bd. of Educ. of Chi.*, 797 F.3d 426, 434 (7th Cir. 2015) (to satisfy commonality requirement, "[t]he claims must depend upon a common contention that is capable of class wide resolution"); *Spano*, 633 F.3d at 586 (to satisfy typicality requirement, "there must be enough congruence between the named representative's claim and that of the unnamed members of the class to justify allowing the named party to litigate on behalf of the group").

In this case, plaintiffs say that the predominant common question is whether defendants are misclassifying all of their exotic dancers as independent contractors rather than employees and thus evading three requirements of state and federal law: (1) paying plaintiffs a minimum wage; (2) paying plaintiffs overtime; and (3) allowing plaintiffs to keep all of their tips. Under the FLSA, a worker's status is determined under the "economic realities" test, which focuses on the degree of control exercised by the employer, among other things. *Williams v. Wisconsin Dep't of Workforce Dev.*, No. 13-cv-794, 2015 WL 1520772, at *1–2 (W.D. Wis. Apr. 3, 2015).[4] The parties do not discuss the standard under state law, but they also do not contend

---

[4] Courts have identified six nonexclusive factors to guide the determination: 1) the nature and

that it is different from the federal standard, so the court will assume that the standards are the same for the purpose of the pending motions.

To support their allegation that defendants have a policy of misclassifying dancers as independent contractors rather than employees, plaintiffs cite declarations of eight women who worked at Cruisin' Chubbys after 2014. Dkts. 74–81. Each of the women avers that the defendants determined their schedule, including when to arrive at the club; instructed them how to dress, how to perform, and what to do in between performances; determined when they would perform and for how long; deducted their pay when they arrived late or failed to perform as instructed; defined the types of private dances they could perform; imposed a pricing structure for each type of private dance; imposed "tip out" fees; and determined when the dancers could leave the club.

A classwide policy or practice related to a key issue of liability is one of the most common ways for plaintiffs to show that class certification is appropriate, even when there are some differences among the potential claims. *Dorman v. DHL Exp. (USA), Inc.*, No. 09-cv-99, 2010 WL 446071, at *3 (W.D. Wis. Feb. 3, 2010) ("Typically, when an employee challenges its employer's policy, the validity of that policy predominates over individual issues and class certification is appropriate.") (internal citations omitted).[5] Because the question whether

---

degree of the alleged employer's control as to the manner in which the work is to be performed; 2) the alleged employee's opportunity for profit or loss depending upon his managerial skill; 3) the alleged employee's investment in equipment or materials required for his task, or his employment of workers; 4) whether the service rendered requires a special skill; 5) the degree of permanency and duration of the working relationship; and 6) the extent to which the service rendered is an integral part of the alleged employer's business. *Sec'y of Labor, U.S. Dep't of Labor v. Lauritzen*, 835 F.2d 1529, 1535 (7th Cir. 1987).

[5] *See also Falcon,* 457 U.S. at 159 n.15 ("Significant proof that an employer operated under a general policy of discrimination conceivably could justify a class of both applicants and employees if the discrimination manifested itself in hiring and promotion practices in the same

6

defendants are misclassifying the dancers is central to determining liability, it makes sense to allow plaintiffs to proceed as a class. *Bell v. PNC Bank, Nat. Ass'n*, 800 F.3d 360, 374–75 (7th Cir. 2015) ("[C]ommonality is satisfied when determination of the truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke. . . .The complexity of proof is a problem plaintiffs will have to address in presenting their case on the merits but it does not negate predominance of the central, common issue.") (internal quotations and alterations omitted).

This conclusion is supported by the many decisions across the country in which courts have certified classes involving dancers contending that they were misclassified. *E.g.*, *DeGidio v. Crazy Horse Saloon & Rest., Inc.*, No. 13-cv-2136, 2017 WL 5624310, at *15 (D.S.C. Jan. 26, 2017) (collecting cases in which district courts certified classes of exotic dancers asserting wage-and-hour claims).[6] Defendants cite *Pecor v. N. Point EDC Inc.*, No. 16-C-1263, 2017 WL 3723600 (E.D. Wis. June 9, 2017), as an exception to the rule, but *Pecor* is not instructive. The

---

general fashion."); *McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 672 F.3d 482, 492 (7th Cir. 2012) (reversing denial of class certification as to issue whether employer's policy had a disparate impact on African-American employees); *Jamie S. v. Milwaukee Pub. Sch.*, 668 F.3d 481, 497–98 (7th Cir. 2012) ("[A]n illegal policy might provide the 'glue' necessary to litigate otherwise highly individualized claims as a class."); *N.N ex rel. S.S. v. Madison Metro. Sch. Dist.*, No. 08-581, 2009 WL 1531028, at *2 (W.D. Wis. June 1, 2009) ("I conclude that common questions predominate over the differences because plaintiff is challenging what seems to be a uniform policy of the district."); *Nerland v. Caribou Coffee Co., Inc.*, 564 F. Supp. 2d 1010, 1022–24 (D. Minn. 2007) (in concluding that class members were similarly situated, relying on fact that employer "collectively and generally decide[d] that all [potential class members] are exempt from overtime compensation").

[6] *See also Byrne v. Santa Barbara Hosp. Servs., Inc.*, No. EDCV17527JGBKKX, 2017 WL 5035366 (C.D. Cal. Oct. 30, 2017); *Roe v. SFBSC Mgmt., LLC*, No. 14-cv-3616, 2017 WL 4073809, at *1 (N.D. Cal. Sept. 14, 2017); *Miller v. Centerfold Entm't Club, Inc.*, No. 14-cv-6074, 2017 WL 3425887, at *1 (W.D. Ark. Aug. 9, 2017); *Woods v. Club Cabaret, Inc.*, No. 15-cv-01213, 2017 WL 4054523, at *8 (C.D. Ill. May 17, 2017) (citing 10 other cases in which courts certified classes of dancers contending that they were misclassified).

defendants in that case presented evidence that "each dancer has a different arrangement" with the owners of the club, so the court would have had to determine the applicability of labor laws as to each dancer. *Id.* at *2 and *4.

In this case, defendants submitted declarations from other dancers who contradicted plaintiffs' allegations about the amount of autonomy the dancers had, Dkts. 92–97, but those dancers did not aver that defendants made individualized determinations regarding the employment status of each dancer. Rather, defendants' position is that plaintiffs' testimony is simply incorrect and that defendants correctly classify all of their dancers as independent contractors. This shows that there is a dispute that the factfinder will need to resolve, but nothing here suggests that the issue is incapable of being resolved on a classwide basis. *Bell*, 800 F.3d at 374–75 (factual disputes do not preclude class certification so long as policy is "capable of proof at trial through evidence that is common to the class rather than individual to its members") (internal quotations omitted).[7]

Defendants also point out that the declarations plaintiffs submitted are not identical in all respects. For example, defendants note that some of the dancers allege that they were required to remove all their clothing while they were pole dancing, but other dancers did not

---

[7] In addition to *Pecor*, defendants rely on other cases in which the court denied a motion for class certification, but none of those cases are closely on point, so they do not require extended discussion. *Boelk v. AT & T Teleholdings, Inc.*, No. 12-cv-40, 2013 WL 261265, at *12 (W.D. Wis. Jan. 10, 2013) (denying class certification on claims that employees were required to work through meal breaks because "it is clear from the deposition testimony of plaintiffs and other technicians that the reason for [working through a break] depended on the circumstances, which varied on a day-to-day basis"); *Teed v. Thomas & Betts Power Sols., LLC*, No. 08-cv-303, 2012 WL 12888026, at *1 (W.D. Wis. Jan. 11, 2012) (denying class certification because "there is too great a variation in work experiences among the named and opt-in plaintiffs"); *Dorman*, 2010 WL 446071, at *4 (denying class certification in case involving claims regarding failure to pay overtime because the exemption at issue in the case "depends upon the activities of individual employees") (internal quotations omitted).

include that allegation. This is quibbling. For one thing, defendants do not point to any real inconsistencies among the declarations, only that some of the dancers discussed issues that others did not. In any event, defendants do not explain how any of the minor differences would affect the determination whether the dancers were properly classified. *Bell*, 800 F.3d at 381 ("[O]ur cases demonstrate that commonality as to every issue is not required for class certification.").

Defendants' primary objection is that plaintiffs haven't shown that their damages are likely to be the same. Although class action defendants commonly raise this objection in opposition to motions for class certification, courts have consistently rejected it. *Messner*, 669 F.3d at 815 ("It is well established that the presence of individualized questions regarding damages does not prevent certification under Rule 23(b)(3).") (citing cases).[8] Nearly every class action for damages will involve some differences among the class members, but when there are substantial common questions related to liability, it is still more efficient to decide the common questions in one proceeding than in separate trials. *Parko v. Shell Oil Co.*, 739 F.3d 1083, 1085 (7th Cir. 2014) ("Predominance of issues common to all class members, like the other requirements for certification of a suit as a class action, goes to the efficiency of a class action

---

[8] *See also In re IKO Roofing Shingle Products Liab. Litig.*, 757 F.3d 599, 603 (7th Cir. 2014) ("The district court denied plaintiffs' motion to certify under a mistaken belief that 'commonality of damages' is legally indispensible."); *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 801 (7th Cir. 2013) ("It would drive a stake through the heart of the class action device, in cases in which damages were sought rather than an injunction or a declaratory judgment, to require that every member of the class have identical damages."); *Spano*, 633 F.3d at 585 ("[S]upplemental proceedings can . . . take place if, for example, the common question relates to liability of the defendant to a class and separate hearings are needed to resolve the payments due to each member."); *Schleicher v. Wendt*, 618 F.3d 679, 685 (7th Cir. 2010) ("The possibility that individual hearings will be required for some plaintiffs to establish damages does not preclude certification.").

as an alternative to individual suits."). After liability is resolved, the parties and the court can determine whether separate hearings or subclasses are necessary to determine damages. *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 800 (7th Cir. 2013). *See also Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004) (describing various methods for handling individualized damages determinations in a class action).

Defendants cite *Espenscheid*, 705 F.3d 770, for the proposition that, "where the only relief sought in the matter is damages, class certification under the FLSA is unavailable," Dkt. 100, at 2, but that is a misreading of the case. The case does include a statement that a class certification is appropriate when "it appear[s] that the calculation of monetary relief will be mechanical, formulaic, a task not for a trier of fact but for a computer program." 705 F.3d at 773. That statement might appear to impose stringent limitations on class actions for damages, but this court has explained why that passage should not be construed as applying generally to Rule 23(b)(3) classes:

> [T]he quoted language was taken from another case, *Johnson v. Meriter Health Services Employee Retirement Plan*, 702 F.3d 364, 372 (7th Cir. 2012), that involved a proposed class under Rule 23(b)(2), not Rule 23(b)(3). Because Rule 23(b)(2) relates primarily to classes for injunctive or declaratory relief, damages can be awarded under that rule only if they are "purely incidental" to the injunction or declaration. *Johnson*, 702 F.3d at 372. Thus, language regarding the requirements for a Rule 23(b)(2) [is] not instructive in a Rule 23(b)(3) class such as this one. In *Espenscheid*, 705 F.3d at 773, the court quoted *Johnson* in identifying one way that damages can be obtained in a class action, but the court did not incorporate the requirements of Rule 23(b)(2) into Rule 23(b)(3). Rather, the court affirmed a denial of class certification in *Espenscheid* because "determin[ing] damages would . . . require 2341 separate evidentiary hearings" and the plaintiffs had not come up with a feasible way for doing that. *Id.*

*Eggen v. Westconsin Credit Union*, No. 14-cv-873, 2016 WL 797614, at *4 (W.D. Wis. Feb. 26, 2016).[9] Since *Espenscheid*, the court of appeals has reaffirmed its repeated holding in earlier cases that differences in damages generally do not defeat a claim for class certification, so the court declines to adopt defendants' reading of *Espenscheid*. *E.g.*, *Bell*, 800 F.3d at 379 (reversing district court's decision denying class certification in damages case brought under FLSA; "[t]he fact that the plaintiffs might require individualized relief or not share all questions in common does not preclude certification of a class"). *See also Suchanek*, 764 F.3d at 756 ("It is routine in class actions to have a final phase in which individualized proof must be submitted.").

**C. Class definition**

There is one potential problem with the proposed class, which is that plaintiffs do not provide a class definition in accordance with Rule 23(c)(1)(B). In granting plaintiffs' motion for conditional certification, the court authorized notice to any individual who worked as a dancer for defendants from February 22, 2014, to the present. Dkt. 35-1. Presumably, plaintiffs are seeking a similarly broad class definition. But the parties' filings in support of their motions show that the class needs to be narrowed slightly. The descriptions in the dancers' declarations relate to the Cruisin' Chubbys club, but the parties' briefs also refer to performances by at least some of the dancers at Living on the Edge campground. Dkt. 86, at 18 and Dkt. 90, at 14. Plaintiffs suggest that the court can create subclasses related to the venues where the dancers worked, but in light of the paucity of evidence about the campground, the court will limit the class to dancers who performed at the club.[10]

---

[9] Defendants also cite *Lopez v. Sears, Roebuck & Co.*, No. 11-cv-728, 2012 WL 13042619, at *3 (W.D. Wis. Oct. 11, 2012), but that case is similarly inapposite because the court was considering a class under Rule 23(b)(2), not Rule 23(b)(3).

[10] A related question is whether each of the defendants has the same employment relationship

**D. Numerosity and adequacy**

The other Rule 23 requirements do not require extended discussion. Plaintiffs have identified 94 current and former exotic dancers who worked for defendants, so it is reasonable to infer that it would be impracticable to join all of the potential class members as plaintiffs. 5 *Moore's Federal Practice* § 23.22[1][b] (3d ed.) ("A class of 41 or more is usually sufficiently numerous."). *See also Carrel v. MedPro Grp., Inc.,* No. 16-cv-130, 2017 WL 1488359, at *4 (N.D. Ind. Apr. 26, 2017) ("[T]he good faith estimate of 100 employees . . . is sufficiently large to satisfy the requirements of Rule 23(a)."); *Estate of VanDam ex rel. Horizon Tr. & Inv. Mgmt., N.A. v. Daniels*, 278 F.R.D. 415, 423 (S.D. Ind. 2011) (proposed class "in the vicinity of one hundred (100) persons . . . satisfied the numerosity requirement"); *Day v. Check Brokerage Corp.*, 240 F.R.D. 414, 417 (N.D. Ill. 2007) ("[A] class consisting of 100 members is large enough to satisfy the numerosity requirement.").

Defendants rely on *Pruitt v. City of Chicago*, 472 F.3d 925 (7th Cir. 2006), for the proposition that plaintiffs must do more than point to the size of the potential class to meet the numerosity requirement, but that case is readily distinguishable. The proposed class consisted of "fewer than 40" maintenance workers who allegedly had been subjected to racial discrimination. *Id.* at 926. The court of appeals declined to overturn the district court's ruling that it would be practical to join all interested employees because the plaintiffs did "not discuss why it would be any harder to have 40 plaintiffs than to have 40 hearings (each employee's

---

(or lack thereof) with all of the proposed class members. Plaintiffs contend that all of the defendants jointly employed each of the plaintiffs. Defendants did not initially challenge that contention, but in their reply brief, they contend for the first time that they cannot be held jointly liable. Regardless whether that is correct, defendants do not contend that the relationship between the dancers who work at the club and the other defendants varies from dancer to dancer, so the question of each defendant's liability can be decided uniformly.

12

interactions with [the allegedly discriminatory foreman], and the resulting damages if any, are person-specific) as part of one class action." *Id.* at 927. Thus, not only was the proposed class in *Pruitt* significantly smaller than the one in this case, but the plaintiffs in *Pruitt* failed the basic test of class certification, which is to show that "classwide resolution would substantially advance the case." *Suchanek*, 764 F.3d at 761. Defendants' reliance on *De Leon v. Grade A Constr., Inc.*, No. 16-cv-348, 2017 WL 6375821, at *1 (W.D. Wis. Dec. 13, 2017), is misplaced as well because the proposed class in that case was only between 20 and 25 employees. Notably, defendants do not cite any cases in which a court determined that a proposed class of nearly 100 people was not sufficiently numerous.

The final requirement is adequacy, which has two components, one that relates to the named plaintiffs and one that relates to class counsel. Defendants do not challenge counsel's adequacy and the court is persuaded that they meet the requirements in Rule 23(g)(1).

Under Rule 23(g)(1), a court that certifies a class must appoint class counsel, taking into consideration "the work counsel has done in identifying or investigating potential claims in the action"; "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action"; "counsel's knowledge of the applicable law"; and "the resources that counsel will commit to representing the class. In a declaration that accompanies plaintiffs' motion for class certification, lead counsel avers that his "firm has experience prosecuting wage and hour class and collective actions on behalf of dancers working at exotic dance clubs" and has "secured favorable outcomes in the past for dancers." Dkt. 82.

As for the named plaintiffs, they must show that their claims are not in conflict with the claims of the proposed class and that they have sufficient interest in the outcome of the case. *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). *See also Amchem Products, Inc. v.*

13

*Windsor*, 521 U.S. 591, 625 (1997) ("The adequacy inquiry . . . serves to uncover conflicts of interest between named parties and the class they seek to represent."). The declarations submitted by the named plaintiffs do not reveal any conflicts of interest. And like anyone else who joins the class, their goal is to show that defendants are incorrectly classifying dancers under state and federal labor laws and to be paid accordingly.

Defendants do not point to any conflicts between the named plaintiffs and the proposed class members, but defendants question whether the named plaintiffs share an "interest" with the class: "So what is that interest? Is it to get money? Is to sting Defendants for some reason? We do not know." Dkt. 91, at 11. Defendants are confusing "interests" with motivations. They cite no authority for the view that courts must evaluate a plaintiff's intent before determining that she is an adequate representative. In any event, defendants offer nothing but speculation to support their suggestion that the named plaintiffs had any improper motive for bringing their claims.

Defendants also suggest that plaintiffs are not adequate because more dancers did not join the lawsuit after the court conditionally certified plaintiffs' FLSA claims. And they submitted declarations of dancers who say that they prefer to be independent contractors. But defendants do not explain how those issues relate to the adequacy of the named plaintiffs. If defendants mean to suggest that the named plaintiffs will be unable to adequately represent the dancers who do not wish to join the lawsuit, that is obviously true but also irrelevant. Defendants cite no authority for the view that plaintiffs have any duties to anyone other than those individuals who join the class. The relevant question is whether there is a conflict among the *claims*, not whether some proposed class members might disagree with the purpose of the lawsuit.

If the court accepted defendants' argument, it would allow an employer to defeat a motion for class certification by alleging that some employees would prefer to be paid in a manner that violates the law. That is not an accurate reflection of what it means to be an adequate named plaintiff. If some dancers believe that they are correctly classified as independent contractors, they are free to support defendants' efforts to keep the status quo in place.

**E. Conclusion**

In sum, the court is persuaded that class certification is appropriate under both Rule 23(b)(3) and § 216(b). Plaintiffs meet all the requirements of Rule 23(a): the class is sufficiently numerous; the class claims share common questions; the claims of the named representatives are typical of the class; and the named plaintiffs as well as class counsel are adequate. And plaintiffs have satisfied the requirements in Rule 23(b)(3) to show that common questions predominate for the purpose of determining liability and that a class action is a superior method of resolving liability. Accordingly, the court will certify the following class: "Any individual who worked as an exotic dancer at Cruisin' Chubbys Gentlemen's Club from February 22, 2014, to the present."

**F. Class notice**

The only remaining issue is class notice. Under Rule 23(c)(2)(B), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Generally, plaintiffs' counsel include a proposed class notice with their motion for certification, but plaintiffs failed to do that in this case. I will give them the opportunity to do that now. Plaintiffs should take care to include all the information required under Rule 23.

Notice must clearly, concisely, and comprehensibly state: (1) the nature of the action; (2) the class definition; (3) the class claims, issues or defenses; (4) that a class member may enter an appearance through an attorney should he or she desire; (5) that the court will exclude any class member requesting exclusion; (6) the time and manner for requesting exclusion; and (7) the binding effect of a class judgment on class members, regardless of whether a member may have a stronger individual claim of liability not dependent on proof of an unofficial policy to deny overtime pay. Fed. R. Civ. P. 23(c)(2)(B).

ORDER

IT IS ORDERED that:

1. Plaintiffs' motion to dismiss Jane Roe #5, Dkt. 83, is GRANTED.

2. Plaintiffs' motion for class certification, Dkt. 72, is GRANTED, and defendants' motion for decertification, Dkt. 85, is DENIED.

3. The court certifies the following class: "Any individual who worked as an exotic dancer at Cruisin' Chubbys Gentlemen's Club from February 22, 2014, to the present."

4. The court appoints the law firm of Moen Sheehan Meyer Ltd. as class counsel.

5. Plaintiffs may have until March 14, 2018, to file a proposed class notice. Defendants may have until March 21, 2018, to file a response.

Entered March 6, 2018.

                                        BY THE COURT:

                                        /s/

                                        _____
                                        JAMES D. PETERSON
                                        District Judge