IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

TERIANA JONES and BETHANY MORRISSEY,
on behalf of themselves and a class of employees
and/or former employees, similarly situated,

        Plaintiffs,

v.                            Case No. 17 cv 125

CRUISIN' CHUBBYS GENTLEMEN'S CLUB, et al.,

        Defendants.

**BRIEF IN SUPPORT OF JOINT MOTION FOR
PRELIMINARY APPROVAL OF SETTLEMENT**

Introduction

The Plaintiffs, women who performed as an exotic dancers at a nightclub owned by the Defendants, asserts that they and other dancers were miscategorized as independent contractors rather than employees, and are therefore entitled to be paid minimum wages, plus overtime. They also assert that dancers were required to share tips and that a portion of the dance fees (which they seek to characterize as tips) were wrongfully taken from them (this is cast alternatively as a wage issue and as conversion or unjust enrichment). Defendants denied that the dancers are employees and have counterclaimed that, to the extent that any back wages are owed, those amounts must be offset by amounts paid to the dancers as dance fees.

The parties have jointly moved for preliminary approval of their settlement agreement. The settlement provides for a total settlement of $400,000.00 for roughly 109 individuals. The settlement is fair and reasonable, as it fully meets this Court's criteria for such settlements. As such, the parties respectfully request the Court (1) grant preliminary approval to the settlement

agreement and the terms and administration process proposed therein; and (2) approve Class Counsel's proposed costs and attorney's fees.

## STATEMENT OF THE CASE

### I. PROCEDURAL HISTORY

On February 22, 2017, Plaintiffs Teriana Jones filed a Complaint, and on May 23, 2017, Teriana Jones and Bethany Morrissey filed an Amended Complaint in asserting an FLSA collective action and a state wage and hour claim, that they sought to have certified as a class action.

The FLSA collective action is an "opt-in" lawsuit, and after the filing of the lawsuit, other performers opted-in. The state law claims are "opt out," and some dancers have opted out of the case. The statute of limitations in an FLSA action is two years (or three years if Defendants' violation of the law was intentional), so Ms. Jones and Ms. Morrissey would potentially be entitled to damages going back to February 22, 2015 or possibly to February 22, 2014.

The Court has already certified the class, and the period to opt-in and to opt-out has expired.

### II. SETTLEMENT BACKGROUND

Throughout 2017 and 2018, both parties engaged in written discovery, and multiple depositions were taken.

On July 10, 2018, the parties and their counsel engaged in mediation under the auspices of Magistrate Peter Oppeneer and but were unable to arrive at a settlement in principle. Parties continued discussing settlement and on August 23, 2018, arrived at a settlement in principle.

After a rigorous discussion of every detail of the case, and after satisfying questions and concerns raised by the Class Representatives, the final agreement was reached.

### III. THE SETTLEMENT AGREEMENT

The parties' executed Settlement Agreement is attached hereto as Exhibit A. The key terms of the agreement are extracted below:

### A. Consideration.

In order to resolve the Plaintiffs' FLSA and Wisconsin wage and hour claims, the Defendants agree to pay to the Plaintiff, the class, and their counsel $400,000 (the "Settlement Amount"), which amount is inclusive of the Plaintiffs' attorneys' fees and the Plaintiffs' other fees and costs, including the claims administration expenses to be borne by the Plaintiffs. This Settlement Amount is subject to reversion, described below in Paragraph C.

### B. Desired Resolution and the Effective Date

Payment of the Settlement Amount shall resolve all disputes that have been raised or that could have been raised in this Lawsuit, including disputes regarding hours worked, the payment or non-payment of wages, overtime compensation, minimum wage compensation, penalties, liquidated damages, and retaliation. This Agreement shall be final and effective following the Court's issuance of an order for final judgment, as set forth below in Paragraph C.

### C. Settlement Steps

The following steps apply to the implementation of this Agreement:

1. The Parties have signed the Agreement.

2. The Parties have filed a joint motion seeking preliminarily approval of the settlement and directing notice to be sent to all Class Members.

3. Within 5 days after the Court's preliminary approval, the Plaintiffs shall cause to be sent notice to all Class Members ("Settlement Notice"), as more fully set forth in Paragraph D below, notifying them of the proposed

3

settlement and providing them with 45 days in which to submit settlement claims.

4. Immediately after the Fairness Hearing, the Defendants, through their attorneys, will remit $400,000.00 to the Plaintiffs' attorneys' trust account.

6. Consistent with the Federal Class Action Fairness Act, 28 U.S.C. § 1715 ("CAFA"), the Defendants will serve appropriate State and Federal official(s) with notice of this settlement ("CAFA Notice") within 10 days of the date on which the motion for preliminary approval is filed.

7. The parties shall jointly move the Court to enter a final approval of the settlement through an Order for Final Judgment conditioned upon a dismissal with prejudice and a general release of all claims.

8. Upon entry of a final judgement, all claims shall be deemed settled, released, and dismissed in their entirety, on the merits, and with prejudice. The Court's dismissal with prejudice will apply to all Class Members who do not properly exclude themselves from the settlement within the Opt-Out Period.

9. Plaintiffs' attorneys shall be responsible for administering the class settlement within 60 days of the Court's entry of an Order for Final Judgment ("Final Distribution Date") as follows:

    (a) Approximately 33% of the Settlement Amount ($133,320.00 in fees and $ 4,366.04 as reimbursement for expenses) shall be paid to Plaintiffs' attorneys as reimbursement for costs and attorney's fees;

    (b) From the remaining balance ($262,313.96), Plaintiffs shall be paid $18,000.00 ($10,000 for Tariana Jones and $8,000 for Bethany Morrissey) for their time and effort as class representative, an amount in addition to what they would otherwise be entitled to as a Class Member.

    (c) From the remaining balance ($244,313.96), the Plaintiffs will cause to be distributed 50% ($122,156.98) to Class Members *per capita* who did not opt-out of the settlement during the Opt-Out Period, more fully described below in Paragraph E, and who timely return a fully completed Settlement Claim. *Per Capita* shares that are not claimed by Class Members by the _____ deadline will become part of the Reversion Fund to be divided equally between the plaintiffs' class and the Defendants. A copy of the Settlement Claim form is attached as Exhibit C.

4

    (d)    Plaintiffs will cause to be distributed the remaining 50% ($122,156.98) to Class Members *pro rata* who did not opt-out of the settlement during the Opt-Out Period, as more fully described below in paragraph F and who timely return a fully completed Settlement Claim. *Pro Rata* shares that are not claimed by Class Members by the _____ deadline will become part of the reversion fund to be divided equally among the plaintiffs' class and the Defendants.

    (e)    Checks that are mailed to class members but not cashed within 45 days of mailing will be invalidated, and those monies will be added to the Reversion Fund.

    (f)    Fifty days after mailing out the distributions described above in (c) and (d), the Plaintiffs will distribute the Reversion Fund, one half to Defendants, and the remaining half to in equal shares to all class members who filed timely claims and cashed the checks that were sent to them.

### D.    The Settlement Notices

Plaintiffs shall cause the Settlement Notice to be sent to all Class Members as described in Step 4 above. Plaintiffs, through their attorneys, shall make reasonable efforts to locate Class Members and find proper addresses. Defendants shall assist Plaintiffs in locating class members to the extent they are able. The Settlement Notice shall inform Class Members of the following information: the defined class; the resolution of the Lawsuit; the scope of release; the settlement and its binding effect once approved; the essential terms of the proposed settlement; the allocation and distribution of settlement funds; the time and place of the hearing concerning approval; the method for objecting; the options available to the class member; how to contact class counsel for inquiries; and the 45-day time limit to object. It is agreed that Class Counsel has the ability to contact class members for the purposes of locating missing dancers; provided, however, that Class Counsel may not contact class members who have opted out of the settlement and that Class Counsel will not contact class members for the purpose of encouraging any such class members to remain in the settlement. A copy of the Settlement Notice to the

Class is attached hereto as Exhibit B.  If any additional persons come forward who claim to be Class Members, the Parties' attorneys shall work collaboratively to determine whether such persons should be included as Class Members.

### E. Per Capita Shares

Per Capita shares shall be distributed to all known Class Members in equal amounts.  A list of Class Members currently known to the Parties was obtained from information which was produced by the Defendants in discovery.  The Parties acknowledge and agree that the list is an incomplete list of Class Members, and that more or fewer dancers may eventually be part of the class.

### F. Pro Rata Shares

The amount of Pro Rata shares shall be determined using work records produced by the Parties in the course of discovery.

### G. Payment of and Taxes on the Global Settlement Fund

The only settlement monies that shall be treated as compensation for wages to Class Members are (1) Pro Rata shares.  Defendants shall be solely responsible for all employer-sided payroll taxes and processing, and Class Members shall be solely responsible for their own employee-related taxes and reporting of same.  Defendants shall be solely responsible for determining, processing, and reporting the amount of tax withholding, if any, required from the W-2 payments made under this Agreement except that Plaintiffs' counsel, who are administering the distribution, shall be responsible for providing to the Defendants an accurate account of all pro rata funds distributed.

### H. Release of Wage and Hour Claims:

Plaintiffs, and each class members who filed timely claims, release and forever discharge Defendants from all claims that they made or could have made (whether known or unknown) whether at common law, pursuant to statute, ordinance, or regulation, in equity or otherwise, that in any way relate to, were asserted by, or could have been asserted by, Plaintiffs in the Lawsuit regarding hours worked, payment or non-payment of wages, overtime compensation, minimum wage compensation, penalties, liquidated damages, retaliation, attorneys' fees, costs, expenses, interest, or any other relief against Defendants through the date the Court enters approval of this Agreement.

## IV. PRELIMINARY APPROVAL OF SETTLEMENT IS APPROPRIATE

### A. The Criteria for Preliminary Approval Have Been Satisfied.

Resolution of class action litigation by settlement is favored by the federal courts. *Isby v. Bayh*, 75 F.3d 1191, 1996 (7th Cir. 1996). An FLSA settlement requires court approval in order to be valid and enforceable. *Walton v. United Consumers Club, Inc.,* 786 F.2d 303, 306 (7th Cir.1986). Employees can only bargain, waive, or modify their right to recovery if the parties agree to the terms of the settlement and the court approves the settlement as a fair and reasonable resolution of the bona fide dispute over FLSA provisions, and the settlement is entered as a stipulated judgment. *Lynn's Food Store, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir.1982).

Similarly, a Fed. R. Civ. P. Rule 23(b)(3) class action may only be approved if (1) the individual class members are afforded a new opportunity to request exclusion from the settlement; (2) a hearing has been conducted; and (3) the court finds that the settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e). In making this determination, courts "must

weigh the probabilities of victory or defeat as indicated by the legal or factual situation presented and determine whether the compromise, taken as a whole, is in the best interests" of the class members. *United Founders Life Ins. Co. v. Consumers National Life Ins. Co.*, 447 F.2d 647, 655 (7th Cir. 1971)(internal quotations omitted).  Other factors considered are the complexity, expense, and likely duration of the litigation; reaction of the class to the settlement; the stage of the proceedings and the amount of discovery complete; the risks of establishing liability; the risks of establishing damages; the ability of the defendants to withstand greater judgment; and the range of reasonableness of the settlement funds to a possible recovery in light of all the attendant risks of litigation. *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974).

Preliminary approval of a class action settlement allows members of the Settlement Class to receive notice of the proposed settlement terms and the date and time for the fairness hearing at which members of the Settlement Class may be heard and at which further evidence and argument concerning the fairness, adequacy, and reasonableness of the Settlement Agreement may be presented. *See* Manual for Complex Litigation at §§ 13.14, 21.632.

### 1. The Proposed Settlement Is Fair, Reasonable and Adequate

The Settlement Agreement outlined above is fair and reasonable under the circumstances.  Real disputes exist between the parties as to whether Defendants exercised the degree of control over the dancers necessary to create an employer-employee relationship, entitling them to minimum wages and, if so, as to whether Defendants would have been eligible to be paid overtime.  Furthermore, the Defendants have viable arguments regarding whether Ms. Jones and Ms. Morrissey are proper class representative, whether the Plaintiffs could ultimately certify a class, whether the alleged violations were willful,

whether the alleged violations were intentional, and whether the Defendants would be pushed into bankruptcy were the plaintiffs' class to realize the entire amount of damages they claim.

### 2. The Settlement Was Reached Through Arm's-Length Negotiations

As is discussed above, this settlement comes as the result of a substantial negotiation process, which included mediation before Magistrate Peter Oppeneer, an experienced mediator of complex cases. These negotiations were conducted at arm's length throughout by attorneys experienced in complex wage and hour litigation. The Plaintiffs were represented by two law firms with extensive litigation and employment law experience. Class counsel certifies that the Settlement Agreement resulting from these negotiations was reached at arm's length and is one that is fair and reasonable to class members.

### 3. The Settlement Fund Provides Adequate Relief for the Settlement Class and the Proposed Allocation Method Equitably Divides the Settlement Funds

The Settlement Fund provides relief for the alleged minimum wages, overtime payments and fees and penalties. The parties have agreed on a reasonable and equitable manner of dividing the settlement funds among all class members. In order to fairly divide the settlement funds among all class members, the funds have been divided on a *per capita* and *pro rata* basis, as set forth in the parties' settlement agreement.

### 4. The Proposed Notice and Manner of Service Are Appropriate

In order to protect the rights of absent members of a settlement class, the Court must provide the best notice practicable to all members. *Phillips v. Carlisle & Jacquelin*, 417 US 156, 174-5 (1985). Such a notice should define the class, describe clearly the options open to the class members and deadlines for taking action, describe the terms of the proposed

settlement, disclose any special benefits provided to class representatives, provide information regarding attorney's fees, indicate the time and place of the fairness hearing, explain the procedure for distributing settlement funds, provide information that will enable the class members to calculate individual recoveries, and prominently display the address and telephone number of class counsel and the procedure for making inquiries. Manual for Complex Litigation at § 21.312.

      The Notice attached hereto as Exhibit B accomplishes each of the above criteria. Class Counsel will make all reasonable efforts to contact all putative class members to ensure class members are aware of and able to participate in the settlement or to opt-out if they so choose.

## CONCLUSION

For the above stated reasons, and because the settlement represents a fair and reasonable resolution of the parties' disputes and because preliminary approval is the preferred method of administering such a settlement, the parties respectfully request that the Court grant the parties' Motion for Preliminary Approval.

| | |
|---|---|
| Dated: October 8, 2018 | Dated: October 8, 2018 |
| *s/ Paul A. Kinne* | *s/ Anthony J. Steffek* |
| Paul A. Kinne, SBN 1021493 | Anthony J. Steffek, SBN 1053615 |
| Gingras, Cates & Wachs, LLP | Davis & Kuelthau SC |
| 8150 Excelsior Drive | 318 S Washington St Ste 300 |
| Madison, WI 53717 | Green Bay WI 54301-4242 |
| Tel: (608) 833-2632 | Tel: (920) 435-9378 |
| Fax: (608) 833-2874 | Fax: (920) 435-9391 |
| E-mail: kinne@gcwlawyers.com | Email: asteffek@dkattorneys.com |
| | |
| *s/ Kara M. Burgos* | *Attorneys for Defendants* |
| Kara M. Burgos, SBN 1020960 | |
| Moen Sheehan Meyer Ltd | |
| 201 Main St Ste 700 | |
| La Crosse WI 54602-0786 | |
| Tel: (608) 784-8310 | |
| Fax: (608) 782-6611 | |
| Email: kburgos@msm-law.com | |

*Attorneys for Plaintiffs*