## SETTLEMENT AGREEMENT
## AND GENERAL RELEASE OF ALL CLAIMS

This Settlement Agreement and General Release of All Claims (the "Agreement") is made by and between the defendants, P.T.B., Inc., Timothy Roberts, Kenneth Roberts and Lantz Roberts, (the "Defendants"), and named representative plaintiffs Teriana Jones and Bethany Morrissey (the Plaintiffs), on behalf of themselves and similarly-situated Class Members, as defined below, who do not properly "opt-out" or exclude themselves from this settlement in the manner and timeframes established below.

This Agreement is made as a compromise between the Plaintiffs and Defendants (collectively, the "Parties") for the complete and final settlement of their claims, differences and causes of actions raised by the Parties in this Lawsuit.

### RECITALS

**WHEREAS,** on February 22, 2017, Plaintiff Teriana Jones filed this lawsuit, *Teriana Jones v. Cruisin' Chubbys, et al.,* 17-CV-125-jdp in the Western District for Wisconsin, (the "Lawsuit"), under federal and state wage and hour laws, on behalf of herself and a group of similarly-situated exotic dancers who performed work for the Defendants ("Class Members"), seeking, *inter alia,* minimum wages and overtime pay as the Defendants' employees;

**WHEREAS,** Defendants timely filed an Answer to the initial Complaint,

1


EXHIBIT
A

denying the material allegations of Jones' Complaint and raising the affirmative defense, *inter alia,* that Class Members are and were independent contractors not entitled to minimum wages and overtime pay for their work;

**WHEREAS**, Bethany Morrissey joined as a named plaintiff on May 23, 2017,

**WHEREAS,** Defendants have legal and factual arguments to support their defenses, including;

a. That Class Members are independent contractors not entitled to minimum wages and overtime;

b. That even if they are employees, any money Class Members received in the course of their work for Defendants should offset Defendants obligation, if any, to pay Class Members minimum wages and overtime;

c. That the Plaintiffs will not be able to certify or maintain certification of the state and federal classes defined in the Complaint;

d. That any violations of Federal or State wage and hour laws were not willful or intentional within the meaning of the relevant laws, and

**WHEREAS,** the nature of the case presents evidentiary difficulties, including, but not limited to the fact that Class Members are difficult to locate, are reluctant to speak about their work as exotic dancers and have an aversion to taking part in a public legal process, as well as the fact that few records exist showing how much or often each Class Member performed as exotic dancers at Cruisin' Chubbys Gentlemen's Club, making certification difficult;

2

**WHEREAS,** the parties agreed to enter into mediation presided over by the Honorable Peter Oppeneer, in an effort to resolve this case short of continued litigation, and, after such mediation had concluded, on August 23, 2018, did reach such an agreement; and

**WHEREAS,** the Parties recognize the outcome in the Lawsuit is uncertain and achieving a final result through litigation would require additional risk, discovery, time and expense.

**NOW THEREFORE,** the Parties, intending to be legally bound, and in consideration of the mutual covenants and other good and valuable consideration set forth below, agree as follows:

## AGREEMENT

A.    **Consideration:** In order to resolve the Plaintiffs' FLSA and Wisconsin wage and hour claims, Defendants agree to pay to the Plaintiffs, their counsel and the class, $400,000.00 (the "Settlement Amount"), which is inclusive of the Plaintiffs' attorneys' fees, and the Plaintiffs' other fees and costs, including claims administration expenses to be borne by Plaintiffs (as described below).

B.    **Desired Resolution and the Effective Date:** The Parties enter into this agreement to resolve all disputes regarding hours worked, the payment or non-payment of wages, overtime compensation, minimum wage compensation, penalties and liquidated damages Plaintiffs have or may have through the date that they sign this Agreement that relate in any way to the Released Parties.

This Agreement shall be final and effective following the Court's Issuance of an Order for Final Judgment.

C. **Settlement Steps:** The following steps shall apply to the implementation of this Agreement:

1. The Parties and their attorneys shall sign this Agreement prior to filing a motion seeking an Order Preliminarily Approving Class Settlement.

2. Within 10 business days of the parties executing this Settlement Agreement, the Defendants will produce a non-revocable letter of credit in the amount of $400,000 from Defendants' bank, with the Plaintiffs' attorney's trust account named as beneficiary. (The letter of credit will be non-revocable other than under the circumstance where the Court does not approve this Agreement.)

3. The Parties shall file a joint motion seeking an Order Preliminarily Approving Class Settlement and Directing a Notice of Proposed Class Action Settlement and Hearing ("Settlement Notice") to be sent to all Class Members.

4. Prior to filing a motion seeking an Order Preliminarily Approving Class Settlement, Plaintiffs, through their counsel, will provide Defendants' counsel with a list of the members of the Class, including names and addresses of each member, and the distribution plan, for Defendants' use in preparing the requisite CAFA notices.

5. The manner of calculating and effecting the distribution to the Class shall be as follows:

4

a.      Counsel for the class will ascertain the number of class members'
names that the records that have been provided by Defendants in discovery
show performed at Cruisin' Chubbys Gentlemen's Club from February 22,
2014, to the date of application for preliminary approval of the Settlement
Agreement, which is approximately 109 dancers. Then, the $122,156.98 that
is available for *per capita* distribution[1] will be divided by the number of class
members; the quotient will be the amount that is sent to each class member
who returns a completed Settlement Claim within 45 days after Notices to the
Class are mailed out. The *per capita* shares of any class members who do not
return completed Settlement Claims within 45 days after Notices to the Class
are mailed out and the *per capita* shares of any class members who opt out
within the time established for opting out will become part of the reversionary
fund.

b.      Counsel for the class will determine how many shifts each class
member performed at Cruisin' Chubbys Gentlemen's Club from February 22,
2014, to the date of the application for preliminary approval of the Settlement
Agreement on the basis of the records that have been provided by Defendants
in discovery. Each class member will be eligible for a share of the second
$122,156.98; each share will be proportionate to how many shifts she worked
- this will be known as the *pro rata* share. Each class member will be notified
of the number of shifts on which her share is based and the approximate

---

[1] The explanation of how the $122,156.98 amount has been determined is found in
paragraph 11.

amount to be awarded to her on a *pro rata* basis.

c.       The Settlement Notice will contain a description of the class member's *pro rata* amount. The *pro rata* shares of any class members who do not return completed Settlement Claims within 45 days after Notices to the Class are mailed out will become part of the reversionary fund.

d.       All parties acknowledge the difficulty in obtaining detailed information in discovery in this lawsuit as to the frequency and/or duration that class members performed at Cruisin' Chubbys Gentlemen's Club during the relevant period; therefore, it is anticipated that some dancers who were not previously identified may learn of the settlement and request inclusion in the Class. Counsel for the Class and counsel for the Defendants agree to work together informally in order to investigate all such claims and to make every effort to include every legitimate claimant in the class. It is because of the possibility of class members who are unknown to the parties at this time making a claim after the settlement is publicized that the exact number of the class and therefore the exact amount of each *per capita* award of damages will be only approximate at the time of sending out Notices to the Class.

e.       Once the time for submitting Settlement Claims has concluded, Class Counsel will adjust the total number of class members to include any members added following sending of the Settlement Notice, and then apply the same formula, i.e., $122,156.98 divided by the total number of members in the

Class (which will include class members who did not submit a Settlement Claim or who formally opted out of the settlement), to determine the *per capita* share to send to each class member who has submitted a timely completed Settlement Claim.

f.      Because of the difficulty in obtaining detailed information in discovery in this lawsuit as to the frequency and/or duration that the class members performed at Cruisin' Chubbys Gentlemen's Club during the relevant period, it is also anticipated that some class members may assert that they have worked more shifts than has been initially determined. In that event, Counsel for the Class and counsel for the Defendants agree to work together informally in order to investigate any such claims and to make every effort to arrive at a fair compromise figure that will be offered to the claimant. If the claimant agrees to accept that compromise figure, it will become the official number of shifts she has worked and used for determining the *pro rata* distribution. If the claimant does not agree to accept the compromise number that is offered, she will be advised of her right to file an objection and attend the Fairness Hearing. If the claimant does not file an objection or attend the Fairness Hearing, her pro rata share will be based on the records produced in discovery.

g.      Once the time for submitting Settlement Claims has concluded (assuming no objections have been filed), Class Counsel will adjust the figures as necessary, then applying the same formula,

$122,156.98 divided by the total number of shifts worked by the Class (which will include class members who did not submit a Settlement Claim or who formally opted out of the settlement) to determine the *pro rata* share to send to each dancer who has timely submitted a completed Settlement Claim. If any objections are filed, this recalculation will await the conclusion of the Fairness Hearing.

   h.    The reversionary fund will comprise the money from the *per capita* and *pro rata* shares of all class members who did not file a Settlement Claim, the money from the *per capita* and *pro rata* shares of all class members who opted out of the Class, as well as all monies from checks sent to class members that are not cashed within 45 days of mailing. After the 45-day check-cashing period has elapsed, the reversionary fund will be divided equally: 50% will be returned to the Defendants via Defendants' attorney, and 50% will be distributed on a per capita basis to those members of the Class who (1) submitted Settlement Claims and (2) also cashed their initial checks within the 45-day time period.

   6.    Once preliminarily approved by the Court, Plaintiffs shall send the Settlement Notice and a Settlement Claim form, along with a stamped, self-addressed envelope in which to return the claim form, to all class members for whom contact information is available, notifying them of the proposed settlement and giving them the opportunity to opt-out of the class action for a period of 45 days following the date of mailing out the

8

Settlement Notice ("Opt-Out Period").

7.   Plaintiffs will include a Settlement Claim form with each Settlement Notice. Each Class member shall be required to mail back to Plaintiffs' counsel, or its designee, within 45 days from the date that Notice of Settlement is mailed, a Settlement Claim form, confirming her name and address and containing her Social Security number in order to be paid. Members who do not opt out but do not mail back the Settlement Claim will be bound by the Settlement Agreement but will not be paid any money from the settlement. The money that would have been paid to them will become part of the reversionary fund.

8.   Consistent with the Federal Class Action Fairness Act, 28 U.S.C. § 1715 ("CAFA"), Defendants will serve appropriate State official(s) and Federal official(s) with notice of this settlement ("CAFA Notice") within 10 days of filing the Motion for Preliminary Approval of the Settlement Agreement.

9.   The parties shall jointly move the Court to enter a final approval of the settlement through an Order for Final Judgment conditioned upon a dismissal with prejudice and a general release of all claims. Consistent with CAFA, 28 U.S.C. § 1715, an order for final approval may not be entered until 90 days following the state/federal agencies' receipt of CAFA notices.

10.   The Court shall enter an Order for Final Judgment. Upon entry,

all claims shall be deemed settled, released, and dismissed in their entirety, on the merits, and with prejudice. The Court's dismissal with prejudice will apply to all Class Members who do not opt-out of the settlement.

11.   Plaintiffs' attorneys are responsible for administering the class settlement within 60 days (the "Final Distribution Date") of the Court's entry of an Order for Final Judgment as follows:

a.     33% of the Settlement Amount ($133,320) shall be paid to Plaintiffs' attorneys as attorney's fees;

b.     $2,545.88 of the Settlement Amount shall be paid to Plaintiffs' attorneys for out-of-pocket expenses for Moen, Sheehan Meyer, Ltd and $1,820.16 of the Settlement Amount shall be paid to Plaintiffs' Attorneys for out-of-pocket expenses for Gingras, Cates & Wachs LLP;

c.     From the remaining balance ($262,313.96), the Plaintiffs shall be paid $10,000 and $8,000, respectively for their time and effort as class representatives an amount in addition to what she would otherwise be entitled to as a Class Member.

d.     From the remaining balance ($244,313.96), Plaintiffs will distribute up to 50% ($122,156.98) to Class Members *per capita* who did not opt-out of the settlement during the Opt-Out Period and who returned the completed Settlement Claim Form provided with the Notice of Class Action Settlement within that period. *Per capita* amounts not claimed by Class Members by not returning the completed Settlement Claim Form or rejected

by class members who opted out of the settlement during the Opt-Out Period will be placed in the Reversionary Fund, as described above.

e.    The Plaintiffs will distribute the remaining up to 50% ($122,156.98) to Class Members *pro rata* who did not opt-out of the settlement during the Opt-Out Period and who returned the completed Settlement Claim form sent with the Notice of Class Action Settlement within that period, calculated pursuant to the terms set forth above. *Pro rata* amounts not claimed by Class Members by not returning the completed Settlement Claim Form or rejected by class members who opted out of the settlement during the Opt-Out Period will be placed in the Reversionary Fund, as described above. Plaintiffs' attorneys will be solely responsible for, and vested with sole discretion to, develop a formula that fairly allocates the *pro rata* settlement monies to the Class Members based on the records produced in discovery.

E.    **The Settlement Notices:** Class Counsel shall send the Settlement Notices to all Class Members. In sending the Settlement Notices, Class Counsel shall make reasonable efforts to locate class members and find proper addresses. Defendants and their counsel shall assist Class Counsel in locating class members to the extent they are able. The Settlement Notices shall inform Class Members (among other things) of the defined class; the resolution of the Lawsuit; the scope of release (including paragraph I below); the settlement and its binding effect once approved; the essential terms of the proposed settlement; the allocation and distribution of settlement funds; the time and place of the hearing

concerning approval; the method for objecting; the options available to the class member; how to contact class counsel for inquiries; and a deadline to object. It is agreed that Class Counsel has the ability to contact class members for the purposes of locating missing dancers; provided, however, that Class Counsel may not contact class members who have opted out of the settlement and that Class Counsel will not contact class members for the purpose of encouraging any such class members to remain in the settlement.

F.   **Payment of and Taxes on the Global Settlement Fund:**

1.    Only the per capita settlement monies paid to settlement class members shall be treated as W-2 wages; the remainder of settlement monies paid to class members are liquidated damages not subject to employer wage taxes. Defendants shall be solely responsible for all employer-side payroll taxes and processing, and class members shall be solely responsible for their own, employee- related taxes and reporting of same.

2.   Once Plaintiffs' counsel advises them of what wage payments have been made and to whom, Defendants shall be solely responsible for determining, processing, and reporting the amount of tax withholding, if any, required from the W-2 payments made under this Agreement. The Named Plaintiffs and the Class Members are not relying on any information provided by the Defendants concerning the tax consequences made under this Agreement.

G.   **Release of Wage and Hour Claims:** The Named Plaintiffs (by their

signatures below) and each Class Member (by not opting out of the Settlement Agreement) releases and forever discharges Defendants from all claims of any kind whatsoever that they made or could have made (whether known or unknown) that in any way relate to, were asserted by, or could have been asserted by, the Plaintiffs in the Lawsuit regarding hours worked, the payment or non-payment of wages, overtime compensation, minimum wage compensation, meal and rest periods, travel time, sleep time, penalties, liquidated damages, attorneys' fees, costs, expenses, interest, or any other relief against Defendants through the date they sign this Agreement (referred to in this Agreement as "Plaintiffs' Claims.")

H. **Percentage of opt-outs:** The Parties agree that if 10% or more of the Class Members opt out of the Class, then this Settlement Agreement, at Defendants' sole option, may be voided. Defendants will notify Plaintiffs' counsel and the Court within 5 days of their receipt of the final opt-out information if they wish to exercise their option to void the Settlement Agreement. If the Defendants fail to so notify Plaintiffs' counsel and the Court within 5 days, the Settlement Agreement will remain in full force.

I. **No Admission of Liability:** The Parties agree and acknowledge this Agreement is the result of a compromise and shall not be construed as an admission of liability, responsibility, or wrongdoing by the Defendants. The Defendants deny any liability, responsibility, or wrongdoing as alleged in the Lawsuit. It is expressly understood by the Parties that the Plaintiffs shall not

be deemed a "prevailing party" for any purpose, including any fee-shifting statute, rule, or agreement, but the Defendants warrant and represent they do not, and will not, oppose Plaintiffs' Counsels' fee petition.

**J.** **Severability of Provisions:** The provisions of this Agreement shall not be deemed severable. If this Agreement is not approved by the Court in whole, the Parties agree they will attempt, in good faith, to revise this Agreement and resubmit this Agreement for approval by the Court.

**K.** **Knowing and Voluntary Waiver:** The Parties acknowledge and agree they had sufficient time to consider this Agreement and consult with legal counsel of their choosing concerning its meaning. When entering into this Agreement, the Parties have not relied on any representations or warranties made by the Parties, other than representations and warranties expressly set forth in this Agreement.

**L.** **Continuing Jurisdiction:** Nothing in this Agreement is intended to limit the Court's authority to retain continuing and exclusive jurisdiction over the Parties to this Agreement, including Class Members, for the purpose of administration and enforcement of this Agreement. The Parties intend that any disputes regarding this Agreement to be heard only by the Court.

**M.** **Choice of Law:** The enforcement of this Agreement shall be governed and interpreted by, and under the laws of the State of Wisconsin, regardless of whether any party is, or may hereafter be, a resident from another state.

**N.** **Named Plaintiffs' Authorization:** The Named Plaintiffs and Plaintiffs'

14

Counsel warrant and represent that: the Named Plaintiffs are the duly authorized representatives of the Plaintiffs' classes; the Named Plaintiffs are authorized  to make decisions on behalf of herself and of the Class, including settlement of the Plaintiffs' claims in the Lawsuit; the Named Plaintiffs and Plaintiffs' Counsel are expressly authorized to take all appropriate action required, or permitted,  to be taken by the Plaintiffs under this Agreement to effectuate its terms; and  they are expressly authorized to enter into any modifications or amendments  to this Agreement that the Named Plaintiffs and Plaintiffs' Counsel deem appropriate and with which the Defendants agree.  The Named Plaintiffs who sign below are signing on their own behalf and on behalf of the Class.  Thus, any individual Class Members who do not opt out of the settlement are bound by this Agreement and all of its terms.

O.     **Termination of Working Relationship:** As a material term of this settlement agreement, named Plaintiffs agree that they will not have any right to perform as an exotic dancer at Cruisin' Chubbys Gentlemen's Club, nor will they ever request permission from Defendants to perform as an exotic dancer at Cruisin' Chubbys Gentlemen's Club.

P.     **Amendments/Modifications:** No waiver, modification, or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all the Parties, and then only to the extent set forth in such written waiver, modification or amendment, subject to any required Court

15

approval.

Q.      **Binding Agreement:** The Agreement shall be binding upon, and inure to the benefit of, the Parties and their affiliates, beneficiaries, heirs, executors, administrators, successors, and assigns.

R.      **No Third-Party Beneficiaries:** This Agreement shall not be construed to create rights in, grant remedies to, or delegate any duty, obligation or undertaking established herein to, any third party as a beneficiary of this Agreement. The sole exception to this paragraph shall be the death of a Class Member prior to any distribution of settlement funds. If such a situation arises, then Class Counsel shall work with the authorized representative of the deceased (or her estate) to effectuate the proper payment of the deceased's portion of the settlement fund.

S.      **Cooperation Clause:** The Parties acknowledge it is their intent to consummate this Agreement, and they agree to cooperate and exercise their best efforts to the extent necessary to effectuate and implement all of the terms and conditions of this Agreement.

T.      **Entire Agreement:** This Agreement constitutes the entire agreement of the Parties concerning the subjects included herein. This Agreement may not be changed or altered, except in writing, signed by all Parties and approved by the Court.

U.      This Agreement supersedes and replaces any prior dealings and agreements. Each Party acknowledges that the other Party has made no

representations or promises, other than those in this Agreement, and each Party specifically disclaims any representations or promises except to the extent that they are contained in the Agreement.

**V.    Captions:** The captions or headings of the sections and paragraphs of this Agreement have been inserted for convenience only and shall have no effect on the construction or interpretation of any part of this Agreement.

**W.    When Agreement Becomes Effective; Counterparts:** This Agreement shall become effective upon its execution. The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if the Parties had signed the same instrument.

**X.    Facsimile/Email Signatures:** Execution by facsimile or email shall be deemed effective as if executed in the original.

**Y.    Corporate Signatories:** Each person executing this Agreement, including execution on behalf of P.T.B., Inc., warrants and represents that such person has authority to do so.

[SIGNATURE PAGES TO FOLLOW]

THE FOREGOING SETTLEMENT AGREEMENT AND RELEASE OF ALL CLAMS HAS BEEN READ AND FULLY UNDERSTOOD BEFORE THE SIGNING OF THIS AGREEMENT.

NAMED PLAINTIFFS:

_____     DATED: 10/05/2018
Teriana Jones

_____     DATED: 10/05/2018
Bethany Morrissey

DEFENDANTS:

PTB, INC.,
d/b/a CRUISIN' CHUBBYS GENTLEMEN'S CLUB

By: _____
_____, its _____     DATED: _____

17

_____          DATED: _____
Kenneth C. Roberts


_____          DATED: _____
Lantz Ray Roberts


_____          DATED: _____
Timothy D. Roberts