## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WISCONSIN

TERIANA JONES and BETHANY MORRISSEY,
on behalf of themselves and a class of employees
and/or former employees, similarly situated,

        Plaintiffs,

        v.                        Case No. 17 cv 125

CRUISIN' CHUBBYS GENTLEMEN'S CLUB, et al.,

        Defendants.

## PARTIES' BRIEF IN SUPPORT OF JOINT MOTION FOR FINAL APPROVAL
## OF SETTLEMENT AND FINAL CERTIFICATION OF FLSA
## AND RULE 23 SETTLEMENT CLASSES

### INTRODUCTION

The Plaintiffs, women who performed as an exotic dancer at a nightclub owned by the Defendants, asserts that they and other dancers were miscategorized as independent contractors rather than employees, and are therefore entitled to be paid minimum wages, plus overtime. They also assert that dancers were required to share tips and that a portion of the dance fees (which they seek to characterize as tips) were wrongfully taken from them (this is cast alternatively as a wage issue and as conversion or unjust enrichment). Defendants denied that the dancers are employees and have counterclaimed that, to the extent that any back wages are

1

owed, those amounts must be offset by amounts paid to the dancers as dance fees.

On July 10, 2018, the parties and their counsel engaged in mediation under the auspices of Magistrate Peter Oppeneer but were unable to arrive at a settlement in principle. Parties continued discussing settlement and on August 23, 2018, arrived at a settlement in principle.  The Settlement Agreement was filed with the Court on October 8, 2018. (Dkt. 170-1).

 On January 3, 2019, this Court granted the parties' Joint Motion for Preliminary Approval of Class Action Settlement and parties' Class Notice. (Dkt. 182). The parties now move this Court for a Final Order approving the settlement as follows:

Granting final approval to the Settlement Agreement, adjudging its terms to be a fair, reasonable and adequate resolution of a bona fide dispute, and directing consummation of its terms and provisions;

Granting final approval to the settlement payments to be paid to the participating settlement class members pursuant to the allocation formulas set forth in Sections C of the Settlement Agreement and the Distribution List, appended hereto as an exhibit;

Dismissing the lawsuit on the merits with prejudice, and barring and permanently enjoining, to the fullest extent of applicable law, Class Representatives and all Class Members from pursuing any claims that were released against Defendants, as set forth in Section F of the Settlement Agreement.

## STANDARD FOR FINAL COURT APPROVAL OF CLASS AND COLLECTIVE WAGE AND HOUR ACTION

## SETTLEMENTS

An FLSA settlement requires court approval in order to be valid and enforceable. *Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 306 (7th Cir. 1986). Employees can only bargain, waive or modify their right to recovery if the parties agree to the terms of the settlement and the Court approves the settlement as a fair and reasonable resolution of the bona fide dispute over FLSA provisions, and the settlement is entered as a stipulated judgment. *Lynn's Food Store, Inc. v United States*, 679 F.2d 1350, 1353 (11th Cir. 1982).

Similarly, a Fed. R. Civ. P. Rule 23(b)(3) class action may only be approved if (1) the individual Class Members are afforded an opportunity to request exclusion from the settlement; (2) a hearing has been conducted; and (3) the Court finds that the settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e). In making this determination, the Court "must weigh the probabilities of victory or defeat as indicated by the legal or factual situation presented and determine whether the compromise, taken as a whole, is in the best interests" of the class members. *United Founders Life Ins. Co. v. Consumers National Life Ins. Co.*, 447 F.2d 647, 655 (7th Cir. 1971)(internal quotations omitted). Other factors considered are the complexity, expense, and likely duration of the litigation; reaction of the class to the settlement; the stage of the proceedings and the amount of discovery complete; the risks of establishing liability; the risks of establishing damages; the ability of the defendants to withstand greater judgment; and the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir.1974).

## EFFORTS TO NOTIFY CLASS MEMBERS AND
## TO MAXIMIZE SETTLEMENT PARTICIPATION

Per the terms of the Settlement Agreement, class counsel was responsible for mailing the Notice of Settlement to the class members. The Defendants provided addresses for class members in discovery, producing information sheets that many of the dancers had filled out while working at the club. Some of dancer information sheets were missing; some contained only limited information or information that was entirely false. As a result, class counsel initially had contact information for only 96 of the 109 class members. (Declaration of Class Counsel, Attorney Paul Kinne, 2).

Ninety-Six notices were mailed on January 9, 2019, to dancers for whom counsel had addresses. The notice duly informed the class members of the nature of the case, their legal rights and options, including how to exclude themselves from participating in the settlement, how to object to the terms of the settlement, the date of the fairness hearing, and the proposed method of distribution of the settlement proceeds. (Kinne Declaration, 3).

In addition to the Notice, Class Members were also provided with an individualized Settlement Claim Form that notified each Class Members of the per capita rate that she could expect to receive as well as the pro rata shift share which had been calculated on the basis of the number of shifts worked. (Kinne Declaration, 4).

Counsel made efforts to locate class members for whom they did not have addresses. A legal notice of the settlement appeared in The Wausau Daily Herald

(print and online versions) on January 12, 2019; the Journal Sentinel on January 16, 2019 and the Wisconsin State Journal on January 17, 2019. (Kinne Declaration, 6; Lindgren Declaration, 3). When notices to class members were returned as undeliverable, using LexisNexis SmartLinx® Comprehensive Person Report, updated addresses were obtained and notices were resent. (Kinne Declaration, 7; Lindgren Declaration, 5). There were some dancers for whom counsel had no contact information and no real name, only a stage name.

Between January 27, 2019 and February 25, 2019, Plaintiff Morrissey had an additional 10 dancers that were not in the original list of dancers named by Defendants via discovery, contact our office to obtain notices and claim forms. Notices and claim forms were sent to the dancers between January 27, 2019 and February 25, 2019  (Lindgren Declaration, 4).

As a result of these efforts and the publicity the settlement garnered, dancers called class counsel with updated address information. (Lindgren Declaration, 4).

By the February 25, 2019 postmark deadline, 41 dancers had returned claim forms; 69 declined to participate by not returning their claim forms; no formal objections were filed, and there was one informal objection asserted by Plaintiff Jones with regards to the distribution of reversionary funds to defendants. (Kinne Declaration, 11).   Final participation is itemized in the final distribution matrix, attached as an exhibit, and is summarized as follows:

Number of dancers bound by settlement: 106

Number of participating dancers who returned claim forms: 41

Number of dancers who excluded themselves: 65

Number of formal objections: none.

Number of informal objections: 1

(Kinne Declaration, 12).

The participation rate is therefore 37.9%, and the rate of dancers who made a claim on the settlement proceeds is also 37.9 %. This high participation rate, and high percentage of settlement funds claimed (initial payment of $ 206,218.28 from the per capita and pro rata shares represents 66.67 % of the distribution fund), far exceeds lower claim rates which have been granted approval. See *Williams v. MGM-Pathe*, 129 F. 3d 1026, 1027 (9th Cir. 1997) (approving a settlement in which $9,900 in claims were submitted against a $4.5 million fund); *West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710 (S.D.N.Y. 1970) (approving a settlement with a .04% claims rate).

Finally, it is important to note that the Western District of Wisconsin has approved such reversion clauses in wage and hour lawsuits involving exotic dancers. *See Mays v. Grand Daddy's, LLC*, Western District of Wisconsin Case No. 14-cv-461. Other courts, too, have approved such arrangements. *See, e.g., Hart v. RCI Hospitality Holdings, Inc.,* No. 09 Civ. 3043(PAE), 2015 WL 5577713 (S.D.N.Y. Sept. 22, 2015); *see also Trout v. Meggitt-USA Servs., Inc.,* No. 2:16-cv-07520-ODW(AJW), 2018 WL 1870388, *6 (C.D. Cal. Apr. 17, 2018) (in non-exotic dancer setting, approval of reversion clause where release of wage and hour claims applied only to employees who submit claim forms).

7

## BENEFITS TO THE SETTLEMENT CLASSES

The settlement provided that $262,313.96 (the full Settlement Amount of $400,000 less attorney fees of $133,320.00 and costs of $4,366.04) be allocated to class members as follows:

The named Plaintiffs shall be paid $18,0000 to be divided as payment of $10,000 to Teriana Jones and $8,000 to Bethany Morrissey for their time and effort as class representatives in addition to what they are otherwise entitled to as a Class Member.

From the remaining balance ($244,313.96), Plaintiffs will make distribution from 50% ($122,156.63) to Class Members who did not opt-out of the settlement during the Opt-Out Period and who returned the completed Settlement Claim Form provided with the Notice of Class Action Settlement within that period on a per capita basis. Each per capita share is $2,979.43.

The Plaintiffs will make distribution from the remaining 50% ($122,156.98) to Class Members who did not opt-out of the settlement during the Opt-Out Period and who returned the completed Settlement Claim form sent with the Notice of Class Action Settlement within that period on a pro rata basis. The pro rata amount was calculated based on the employment records that were available, so that each dancer earned $4.15   per shift worked, as evidenced by records produced in discovery.[1]

All per capita and pro rata shares that were not claimed by Class Members

---

[1] Defendants reserve the right to contest the number of shifts worked once they have had an opportunity to review the claims shifts.

by the February 25, 2019, deadline became part of the reversion fund to be divided equally among the plaintiff class and the Defendants.

Checks that are mailed to class members but not cashed within 45 days of mailing will be invalidated, and those monies will be added to the Reversion Fund.

50 days after mailing out the distributions described above in (c) and (d), the Plaintiff will distribute the Reversion Fund, one half to Defendants, and the remaining half to in equal shares to all class members who filed timely claims and cashed the checks that were sent to them.

With 41 participating class members, $51,302.19 will remain undistributed from the per capita and pro rata shares and will become the Reversion Fund. (Kinne Declaration, 12). Pursuant to the settlement agreement, this amount will be divided equally between the parties: $25,651.09 to the defendants and $25,651.09 to the class members. (Kinne Declaration, 14). The class members' share will be divided and distributed per capita to the participating class members. (Kinne Declaration, 14).

Thus, each class member who filed a claim will received one check that contains her initial per capita share of $2,979.43 and her pro rata share, the amount of which will vary from a minimum amount of $4.15 (if the dancer had only performed during one shift) up to $4,409.95 (which was awarded to a dancer who had performed during 1,053 shifts within the relevant time period), and a second check that contains the final per capita share of the Reversion Fund; each such check will be in the neighborhood of $610.74 (or somewhat more if there are

9

uncashed checks to be added to the Reversion Fund). (Kinne Declaration, 15).

The parties and their respective counsel believe that under the terms of the Settlement Agreement, and based upon participation by class members in the settlement, class members are receiving substantial benefits through the settlement.

## THE COURT SHOULD GRANT FINAL
## APPROVAL TO THIS SETTLEMENT AGREEMENT

The Settlement Agreement is a fair, adequate and reasonable resolution to the bona fide dispute between the parties. The Agreement provided a procedure for class members to object to the settlement or any of its terms. The notice mailed to class members explained how Class Members could object to the settlement, if they so desired. Class Members had over 45 days from the date of the notice mailing in which to object to the settlement. There were no formal objections to the settlement that were filed or served. There was one informal objection brought to the attention of class counsel and filed with the Court which only objected to the handling of the distribution of the Reversion Fund with half going back to Defendants. The fact that there is only one informal objection supports final approval of the settlement. *See Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 175 (S.D.N.Y.2000) ("If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement.") (internal citations omitted).

The Settlement Agreement also allowed class members to exclude themselves from the settlement by following a specific procedure. As with objections, the notice mailed to the Class Members explained how Class Members could exclude

themselves from the settlement, if they so desired. The fact that there were no exclusions supports the fact that the settlement reached in this case was fair and reasonable.

Pursuant to 28 U.S.C. § 1715, on January 10, 2019, defense counsel sent CAFA notifications to the Attorney General of the United States and to the Wisconsin Department of Workforce Development by certified mail, return receipt requested. (Steffek Declaration 2). This service was initiated within 10 days of January 3, 2019 (the date on which the Court issued its Order Granting Motion for Preliminary Approval of Settlement Agreement (Dkt. 182)). (Steffek Declaration, 3). All CAFA notices were received on or before January 16, 2019. (Steffek Declaration, 4). Pursuant to 28 U.S.C. § 1715(d), the final order may not be issued earlier than 90 days following service of all CAFA notices, which in this case is April 7, 2019. (Steffek Declaration, 5).

## CONCLUSION

For the reasons set forth above, and those articulated in documents relating to the parties' joint motion for preliminary approval, Dkt. #'s 174 through 182, the parties respectfully request that the Court enter an Order (on or after **April 7, 2019**), granting final approval of the settlement of this dispute on the terms and amounts set forth in the Settlement Agreement and dismissing this case with prejudice.

Dated: March 14, 2019

*s/ Paul A. Kinne*
Paul A. Kinne, SBN 1021493
Gingras, Cates & Wachs, LLP
8150 Excelsior Drive
Madison, WI 53717
Tel: (608) 833-2632
Fax: (608) 833-2874
E-mail: kinne@gcwlawyers.com

*s/ Kara M. Burgos*
Kara M. Burgos, SBN 1020960
Moen Sheehan Meyer Ltd
201 Main St Ste 700
La Crosse WI 54602-0786
Tel: (608) 784-8310
Fax: (608) 782-6611
Email: kburgos@msm-law.com

*Attorneys for Plaintiffs*

Dated:  March 14, 2019

*s/ Anthony J. Steffek*
Anthony J. Steffek, SBN 1053615
Davis & Kuelthau SC
318 S Washington St Ste 300
Green Bay WI 54301-4242
Tel: (920) 435-9378
Fax: (920) 435-9391
Email: asteffek@dkattorneys.com

*Attorneys for Defendants*